Tim Duggan et al., appellants, v. Allen J. Beermann, Secretary of State, et al., appellees.

544 N.W.2d 68

Filed February 23, 1996.   No. S-94-1112.

Alan E. Peterson and Terry R. Wittler, of Cline, Williams, Wright, Johnson & Oldfather, and Mark D. McGuire and Scott J. Norby, of McGuire & Norby, for appellants.

Don Stenberg, Attorney General, L. Steven Grasz, and L. Jay Bartel for appellee Allen J. Beermann.

Todd E. Frazier, of Frazier & Garrett, for appellees Guy Curtis and Nebraskans for Term Limits.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, CONNOLLY, and GERRARD, JJ., and McGILL, D.J.

PER CURIAM.

This is an appeal from an order of the district court for Lancaster County denying injunctive and declaratory relief. In the lower court, appellants sought a declaration that a term limits initiative petition was fatally invalid and defective and sought to enjoin the Secretary of State from placing the measure on the official ballot for the November 8, 1994, general election. The initiative petition (Measure #408) proposed to amend the Constitution of the State of Nebraska by imposing term limits on a variety of federal and state elective offices. The district court denied all relief. The district court did not address

the constitutionality of the measure, since the measure had not been adopted and an opinion on its constitutionality would be advisory. Measure #408 was placed on the ballot, and the voters of Nebraska approved the proposed amendments. After the election, appellants filed a motion for a new trial, seeking a declaration that the amendments were unconstitutional. Appellants' motion for a new trial was denied. In this appeal, appellants continue to assert that the term limits initiative measure was defective and that the resulting amendments are unconstitutional. Pursuant to *U.S. Term Limits, Inc. v. Thornton*, ____ U.S. ____, 115 S. Ct. 1842, 131 L. Ed. 2d 881 (1995), the amendment which imposes term limits upon members of the House of Representatives and the U.S. Senate is unconstitutional. While declining to pass on the constitutionality of the amendments relating to state term limits, we hold that the remaining amendments resulting from Measure #408 must also be struck down because the unconstitutional amendment was so interwoven with the other amendments that the entire measure must now fail. Accordingly, we reverse the judgment of the district court.

## BACKGROUND

On May 13, 1994, this court held that a term limits proposal (Measure #407) had been improperly submitted to the voters in November 1992. *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994) (*Duggan v. Beermann I*). *Duggan v. Beermann I* held that the amendments contained in Measure #407 had improperly been placed on the ballot and were therefore void, despite the fact that they had received the approval of Nebraska voters.

Supporters of Measure #407 decided to submit a second term limits proposal, Measure #408, to Nebraska voters. Guy Curtis, who had been involved with and had supported Measure #407, drafted the "new" initiative petition. Curtis substantially followed the form and substance of the Measure #407 petition, although he added provisions which would impose term limits on certain local officials, including school boards and county attorneys.

On May 24, 1994, Curtis filed a sample of the term limits

initiative petition with Secretary of State Allen J. Beermann. Neb. Rev. Stat. § 32–704(2) (Reissue 1993) requires a sponsor of an initiative measure to file a "copy of the form to be used" with the Secretary of State prior to obtaining any signatures to the petition. The sample petition was prepared on standard letter–size paper. It was not a final copy of the form which was ultimately circulated, as required by statute.

Parenthetically, we note that chapter 32, article 7, of the Nebraska Revised Statutes has been amended and recodified at chapter 32, article 14. However, such revisions were effective January 1, 1995, and are not pertinent to the initiative measure before us.

In May 1994, Curtis sought the assistance and cooperation of U.S. Term Limits, a national term limits proponent. Upon the advice of U.S. Term Limits, Curtis filed an amended petition on May 27 in which the provisions relating to local school boards and county officials were deleted. The amended petition submitted was again a sample draft, rather than a final form.

After the sample amended term limits initiative petition was filed, the actual petition was prepared. The text of the actual petition is identical to that in the sample amended petition, but the final petition differs from the sample form in its use of type size, boldface, and paper size. The actual petition was two–sided and printed on 11– by 17–inch paper. The front side of the petition stated the petition's objectives and the statutory prohibitions regarding who may sign and circulate petitions, and provided 20 lines for the supporters' signatures. The proposed constitutional amendments were printed on the back side of the petition.

Neb. Rev. Stat. § 32–703 (Reissue 1993) provides that each initiative petition shall contain a "concise statement in large type of the objects sought to be secured by submitting the measure to the voters." The object statement for Measure #408 provides:

> **THE OBJECTIVE OF THIS INITIATIVE PETITION IS**: To amend the constitution of Nebraska to provide for a maximum number of consecutive terms to which the Lieutenant Governor, Secretary of State, Auditor of Public Accounts, Treasurer, Attorney General, elected members of the Public Service Commission, elected members of the

Board of Regents, elected members of the State Board of Education; and elected members of the governing boards of any city of the metropolitan class, primary class, or first class, and elected members of any county Board of Commissioners or Supervisors, shall be eligible to file for election and to serve in such offices, To amend the Constitution of Nebraska to limit the number of elections in which a candidate for election to the Office of Representative in Congress or United States Senator shall be eligible to file for election or to be listed on a Nebraska official ballot; to provide for appointments; to allow the voters of any city, county, Board of Regents, or State Board of Education referred to above, to lengthen, shorten, or eliminate such limitations on such terms of office; to provide for effective dates; to provide that the Secretary of State and all election officers in the state shall be subject to penalty for violation of a provision of this amendment.

The object statement does not list the office of state legislator among the offices subject to the proposed term limits. However, in fact, Measure #408 did seek to impose term limits on the Legislature. Measure #408's proposed constitutional amendments, printed on the back side of the initiative petition, provide, in pertinent part:

**The Constitution of the State of Nebraska shall be amended as indicated; or placed in articles and sections as determined by competent authority of the State as follows:**

Article III Section 8 is repealed and amended to read:

Section 8. **Legislators; qualifications; one year residence in district; removal from district; effect; ineligibility.** No person shall be eligible to the office of member of the Legislature unless on the date of the general election at which he is elected, or on the date of his appointment he is a registered voter, has attained the age of twenty–one years and has resided within the district from which he is elected for the term of one year next before his election, unless he shall have been absent on the public business of *the United States* or of this state. And

no person elected as aforesaid shall hold his office after he shall have removed from such district. No person shall be eligible to file for election to or to serve as a member of the Legislature for a period of four years after the expiration of the second of two consecutive terms for which they were previously elected and as further provided in Article XV Section 20.

Article IV Section 3 is repealed and amended to read as follows:

Section 3. The Lieutenant Governor, Secretary of State, Auditor of Public Accounts, Treasurer, Attorney General and members of the Public Service Commission shall be ineligible to file for reelection to those respective offices and shall be ineligible to serve in those respective offices for a number of years equal to the number of years in the term for which they were last elected, next after the expiration of the second of two consecutive terms for which previously elected, and as further provided in Article XV Section 20.

Article VII of the Constitution of Nebraska is amended by the adoption of Section 15 to read as follows:

Section 15. **Elected Officials; ineligibility.** (1) The members of the Board of Regents and the State Board of Education shall be ineligible to file for reelection to their respective offices and shall be ineligible to serve in their respective offices for a number of years equal to the term for which they were last elected next after the expiration of the second of two consecutive terms for which they were previously elected after the general election and as further provided in Article XV Section 20.

(2) The voters of the state may lengthen, shorten, or eliminate the limitations on terms of office for the State Board of Education or the governing board of a state institution of higher education imposed by this Section 15.

Article XV of the Constitution of Nebraska is amended by the adoption of Sections to read as follows:

Section 19. **Elected government officials—limitation on terms.** (1) In order to broaden the opportunities for

public service and to assure that elected officials of governments are responsive to the citizens of those governments, no elected member of any governing board of any city of the metropolitan class, primary class, or first class, and no elected member of any County Board of Commissioners or Supervisors, shall serve more than two consecutive terms in office, except that with respect to terms of office which are two years or shorter in duration, no such elected official shall serve more than three consecutive terms in office. This limitation on the number of terms shall apply to terms of office beginning on or after January 1, 1995. For purposes of this Section, terms are considered consecutive unless they are at least four years apart.

(2) The voters of any city or county referred to above in Article XV, Section 19(1), may lengthen, shorten, or eliminate the limitations on terms of office imposed by this Section 19.

Section 20. **Representatives in Congress; United States Senator; filing ineligibility.** Any person who shall have been elected to serve three consecutive terms in the office of Representative in Congress shall not be listed on any official ballot at any primary or general election to seek a fourth consecutive term; and any person who shall have been elected to serve two consecutive terms in the office of United States Senator shall not be listed on any official ballot at any primary or general election to seek a third consecutive term and neither may be listed on an official ballot as a candidate for a period of years equal to the number of years in the term for which that person was last elected as Representative in Congress or as a United States Senator. The term held and being served as the result of an election prior to the effective date of this amendment shall not be included in the number of consecutive terms referred to in stipulating ineligibility to file for election or to be listed on an election ballot.

[Sections 21 and 22, which contain provisions relating to

persons appointed to office rather than elected and which provide for penalties, are omitted.]

**Severability.** If any of the provisions hereby adopted shall be held void for any reason, the remaining provisions shall continue in full force and effect.

Curtis and a ballot committee (Nebraskans for Term Limits) supporting the measure filed the sample amended petition with Secretary of State Beermann. They then conducted a drive to obtain the necessary signatures to the petition. Approximately $205,000 was raised in support of the campaign. U.S. Term Limits provided over $190,000. Petition signatures were collected, and on July 8, 1994, the signed petitions were filed with Secretary of State Beermann's office.

On August 30, Secretary of State Beermann certified Measure #408 for placement on the ballot. Section 32-704(5) provides that the Secretary of State shall place a measure on the general election ballot if the petition is found to be valid and sufficient after he or she has determined that the applicable constitutional and statutory requirements have been met.

On September 9, appellants, Duggan, John Hasenauer, Ernie Chambers, and Ken Haar, filed a petition in the district court for Lancaster County, seeking an injunction and a declaratory judgment that the initiative petition filed with the Secretary of State was illegal, invalid, and unconstitutional in its entirety. The sponsor of the term limits measure, Curtis, was also named as a defendant.

At the time of trial, appellants were Nebraska citizens and registered voters. Chambers was an elected member of the Nebraska Unicameral, and Haar was an elected member of the Lincoln City Council.

In their petition, appellants alleged the initiative petition was defective in fatal ways: (1) It had insufficient valid signatures; (2) the petition called for a change in the law pertaining to Nebraska's representation in the U.S. Congress and various state and local offices, and such changes were invalid as unconstitutional on their face; (3) the petition form was invalid because it was misleading and incomplete in that its object statement omitted one or more important effects created in the

event the initiative should pass; (4) the petition was not legally sufficient; and (5) the same measure, in form or essential substance, had been submitted to the people within the last 3 years, and article III, § 2, of the Nebraska Constitution bars submission more often than once every 3 years.

For the foregoing reasons, appellants requested a temporary and permanent injunction barring Secretary of State Beermann from placing the measure on the official ballot. In addition, appellants requested that the district court grant declaratory relief declaring that the entirety of the initiative measure was invalid in form, lacking in sufficient signatures, and unconstitutional.

Trial was held in the district court on October 26, 1994. By its order of November 7, the district court held generally in favor of the appellees. The district court entered an order dismissing appellants' petition.

Meanwhile, Secretary of State Beermann had proceeded with preparations to place Measure #408 on the ballot for the November 8 general election. A ballot was prepared, and it put this question to the voters:

Shall the Nebraska Constitution be amended to: (1) set limits of two consecutive terms in office for Nebraska Legislators, Lieutenant Governor, Secretary of State, Auditor, Treasurer, Attorney General, Public Service Commissioners, State Board of Education members, and University of Nebraska Board of Regents members; and (2) limit the number of consecutive terms in office for certain local officials; and (3) prohibit persons who have served three consecutive terms as a Representative in Congress or two consecutive terms in the U.S. Senate from being listed on any official ballot for re-election? Terms currently being served would not be counted.

In accordance with Neb. Rev. Stat. § 32–711 (Reissue 1993), a true copy of the title and full text of Measure #408 was published in legal newspapers throughout the state.

The term limits measure was put to a vote at the November 8 general election. Approximately 357,015 people voted in favor of term limits, and approximately 170,394 voted against the measure.

By proclamation of the Governor, the approved amendments became part of the Constitution of Nebraska. The Revisor of Statutes used the text of the proposed amendments but renumbered some of the amendments prior to publication. See Neb. Const. art. III, § 8; art. IV, § 3; art. VII, § 15; and art. XV, §§ 20, 21, 22, 23, and 24 (Supp. 1995). The initiative measure had proposed that the Constitution be amended to add a new article XV, § 19. However, the Constitution had already been amended in 1992 to add an article XV, § 19, pertaining to liquor licenses. The Revisor of Statutes elected to renumber the amendments rather than "repeal" the existing article XV, § 19. For simplicity's sake, in this opinion we refer to the amendments as they were numbered in the initiative petition rather than as renumbered by the Revisor.

After the November 8 election, appellants timely filed a motion for a new trial. A hearing was conducted on November 15 and 16. On November 16, the district court overruled appellants' motion for a new trial.

On November 16, appellants filed a notice of their intent to appeal to the Nebraska Court of Appeals the orders of the district court dismissing their action and overruling their motion for a new trial. By order of this court, we removed the case to our docket.

## ASSIGNMENTS OF ERROR

Appellants assert the district court erred in (1) finding that the initiative petition was legally sufficient; (2) finding the object statement was sufficiently detailed and accurate; (3) failing to find that submission of Measure #408 within 2 years of a previous vote on a nearly identical provision violated article III, § 2, of the Nebraska Constitution; (4) concluding before the election that the constitutionality of the proposed amendments was not a justiciable issue, and after the election, failing to grant the motion for a new trial and find the issue then clearly justiciable for purposes of the declaratory relief appellants prayed for; (5) failing to conclude that Measure #408 and the corresponding amendments were facially unconstitutional; (6) declining to enter the injunctive relief prayed for by appellants; and (7) failing to grant appellants' motion for a new trial.

## STANDARD OF REVIEW

This is an equitable proceeding, and the court makes an independent determination of both the facts and the applicable law. See, Neb. Rev. Stat. § 25-1925 (Cum. Supp. 1994); *Duggan v. Beermann I*.

## ANALYSIS

We begin our analysis with recognition that the task before us requires us to respect and to give effect to the power the people have reserved to themselves to amend the Nebraska Constitution through initiative measures.

"[A] constitution represents the supreme written will of the people regarding the framework for their government." *Duggan v. Beermann I*, 245 Neb. at 915, 515 N.W.2d at 794. See, *Jaksha v. State*, 241 Neb. 106, 486 N.W.2d 858 (1992); *Laverty v. Cochran*, 132 Neb. 118, 271 N.W. 354 (1936).

The people have the power to amend the Constitution of Nebraska pursuant to Neb. Const. art. III, § 1, which provides in part:

> The people reserve for themselves, however, the power to propose laws, and amendments to the constitution, and to enact or reject the same at the polls, independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act, item, section, or part of any act passed by the Legislature.

Further, article III, § 2, provides in part: "The first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature."

"[I]n a case involving the people's amendment to their Constitution, we make no attempt to judge the wisdom or the desirability in enacting such amendments." *Omaha Nat. Bank v. Spire*, 223 Neb. 209, 213, 389 N.W.2d 269, 273 (1986). See, also, *Lincoln Federal Labor Union v. Northwestern Iron and Metal Co.*, 149 Neb. 507, 31 N.W.2d 477 (1948). However, "in adopting the Constitution, the people have imposed upon themselves limitations on their ability to amend this fundamental law." *Duggan v. Beermann I*, 245 Neb. at 915, 515 N.W.2d at 794. See, *State v. Winnett*, 78 Neb. 379, 110 N.W. 1113 (1907).

If the people choose to amend their Constitution and comply with their self-imposed limitations, then this court will not encroach upon the people's power. Assuming these self-imposed limitations are complied with, the people of Nebraska may amend their Constitution in any way they see fit, provided the amendment does not violate the Constitution of the United States. *Omaha Nat. Bank v. Spire, supra.*

### DISTRICT COURT JURISDICTION

In the district court, appellants prayed for injunctive and declaratory relief. The court held that it did not have jurisdiction to grant declaratory relief regarding the constitutionality of Measure #408 because its jurisdiction was limited to consideration of whether the initiative petition was "legally sufficient" under Neb. Rev. Stat. § 32–706 (Reissue 1993). In so doing, the district court relied upon its analysis in the earlier *Duggan v. Beermann* case in which it had found that " '[j]urisdiction under § 32–706 is for a special, expedited, and summary proceeding', and that proceedings under § 32–706 '. . . cannot be joined with other actions.' "

The district court's holding that a cause of action arising under § 32–706 cannot be joined with a declaratory judgment action is erroneous. As we implicitly stated in *Duggan v. Beermann I,* and now explicitly state here: A prayer for injunctive relief under § 32–706 can properly be joined with a prayer for declaratory relief.

Section 32–706 provides a statutory basis by which the Secretary of State's determination as to the legal sufficiency of an initiative measure and its placement on the ballot can be challenged. Section 32–706 provides that any citizen may challenge the Secretary of State's determination regarding an initiative measure by filing a petition for a writ of mandamus or an injunction in the district court for Lancaster County. See, also, *State ex rel. Labedz v. Beermann,* 229 Neb. 657, 428 N.W.2d 608 (1988). There is nothing within § 32–706 itself which precludes it from being joined with a prayer for declaratory relief.

In *Fitzgerald v. Kuppinger,* 163 Neb. 286, 79 N.W.2d 547 (1956), we were presented with an analogous situation. In that

case, the plaintiff was the Douglas County Attorney. While acting as county attorney, the plaintiff became a candidate for a judicial position. Both positions were elective offices. The controlling statute, Neb. Rev. Stat. § 32–503 (Cum. Supp. 1955), provided that when an incumbent filed nomination papers for another elective office, a vacancy was created in the incumbent's current office. Accordingly, after the county attorney filed his nomination papers for the judicial position, two other individuals filed as candidates for the county attorney position. The plaintiff withdrew his nomination papers for the judicial position and commenced an action to enjoin the Douglas County election commissioner from placing the names of the two other candidates on the ballot, and to obtain a declaratory judgment that his office as the county attorney had not become vacant by his filing for nomination for the judicial position. The plaintiff named the election commissioner and the two challengers for the county attorney office as defendants.

We said: "The theory of the action as to these defendants and the ground upon which the plaintiff contends that he is entitled to the declaratory relief prayed is substantially the same as that interposed as the ground for injunction against the election commissioner, that is, that section 32–503 . . . is unconstitutional." *Fitzgerald v. Kuppinger*, 163 Neb. at 290, 79 N.W.2d at 551.

The two prayers for relief formed one cause of action.

> [A] "cause of action" is the operative facts which give rise to a "right of action" or the remedial right affording redress. Thus, there may be several rights of action arising out of a cause of action. . . . A single cause of action may give rise to more than one theory upon which recovery may be had.

*Mindt v. Shavers*, 214 Neb. 786, 790, 337 N.W.2d 97, 100 (1983). Here, there was only one cause of action generating two remedial rights. There is no improper joinder.

Petitioners often combine a prayer for injunctive relief with a prayer for declaratory relief. See, e.g., *DeCoste v. City of Wahoo*, 248 Neb. 463, 534 N.W.2d 760 (1995); *Abboud v. Lakeview, Inc.*, 237 Neb. 326, 466 N.W.2d 442 (1991); *Ewing v. Scotts Bluff Cty. Bd. of Equal.*, 227 Neb. 798, 420 N.W.2d

685 (1988); *Mullendore v. School Dist. No. 1*, 223 Neb. 28, 388 N.W.2d 93 (1986).

The district court also refused to address appellants' prayer for declaratory relief because it concluded that the constitutionality of the proposed amendments was not a justiciable issue. The court correctly declined to enter an advisory opinion or any declaratory judgment unless and until the initiative measure was adopted.

"A court should refuse a declaratory judgment unless the pleadings present a justiciable controversy which is ripe for judicial determination." *Ryder Truck Rental v. Rollins*, 246 Neb. 250, 253, 518 N.W.2d 124, 126 (1994). "[D]eclaratory judgment proceedings do not ' "require the court to give a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise." ' " *Id.* at 254, 518 N.W.2d at 127. To the degree that appellants sought a declaration that Measure #408, if adopted, would enact amendments which violated the U.S. or the Nebraska Constitution, appellants were seeking an advisory opinion.

After Measure #408 was adopted, appellants filed a motion for a new trial. Appellants stated that because Measure #408 had passed, its provisions were enacted as part of Nebraska's Constitution. They asserted that an opinion of the district court regarding Measure #408's constitutionality would thus not be advisory. A hearing was conducted on November 15 and 16, 1994. On November 16, the district court overruled appellants' motion for a new trial.

The district court's order denying the motion for a new trial was improper. The issue of whether the Measure #408 proposed amendments were unconstitutional was justiciable and properly before the district court as a result of appellants' motion for a new trial as to the prayer for declaratory relief.

SUPREME COURT JURISDICTION

We turn now to our appellate jurisdiction. In *Duggan v. Beermann I*, the Secretary of State asserted that the case should be dismissed as moot. We noted that a case becomes moot when the issue initially presented in the litigation ceases to exist. Since an injunction cannot prevent what has already occurred,

the fact that the measure had already been placed on the ballot, that issue was moot. See, also, *Bamford v. Upper Republican Nat. Resources Dist.*, 245 Neb. 299, 512 N.W.2d 642 (1994). Nonetheless, in *Duggan v. Beermann I*, we were able to address the issues, since appellants had also requested declaratory relief.

Similarly, by the time the appeal was before us in the matter of *Fitzgerald v. Kuppinger*, 163 Neb. 286, 79 N.W.2d 547 (1956), one of the two challengers had won the election for the office of the county attorney. Therefore, we held that the appeal as to the injunction seeking to prevent the election commissioner from placing the challengers on the ballot had become moot. We then proceeded to address the plaintiff's prayer for declaratory relief.

Pursuant to *Duggan v. Beermann I* and *Fitzgerald v. Kuppinger*, we have jurisdiction to address appellants' assignments of error regarding the district court's denial of declaratory relief. We also have jurisdiction to address the assignments of error regarding the denial of injunctive relief. Although the issue of whether the injunction should issue is now moot,

> "[t]here is an exception to the general rule regarding moot questions which should be examined. That exception applies to cases involving matters of public interest. . . . The public interest exception to the rule precluding consideration of issues on appeal due to mootness requires a consideration of the public or private nature of the question presented, desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem."

*Bamford v. Upper Republican Nat. Resources Dist.*, 245 Neb. at 304–05, 512 N.W.2d at 647.

The issues arising from the denial of injunctive relief involve matters of public interest, and it is clearly desirable to provide future guidance in that these issues have already proven themselves capable of repetition. Therefore, we will also address these issues to the degree that we must in order to resolve this case.

## Measure #408 Unconstitutional as to Congressional Offices

The Supreme Court of the United States has held that state–imposed term limits upon congressional offices violate the Constitution of the United States. *U.S. Term Limits, Inc. v. Thornton*, ____ U.S. ____, 115 S. Ct. 1842, 131 L. Ed. 2d 881 (1995).

The eligibility requirements for Congress are straightforward. A candidate for the House of Representatives must be at least 25 years old, have been a U.S. citizen for at least 7 years, and be a resident of the state from which he is seeking election. U.S. Const. art. I, § 2, cl. 2. A candidate for the U.S. Senate must be at least 30 years old, have been a U.S. citizen for at least 9 years, and be a resident of the state from which he is seeking election. U.S. Const. art. I, § 3, cl. 3.

In *U.S. Term Limits, Inc. v. Thornton*, the Court held that the Constitution forbids the states from adding to or altering these specifically enumerated qualifications. The qualifications for members of Congress set forth in the U.S. Constitution are the sole qualifications. The Supreme Court held that before individual states can be allowed to adopt their own qualifications for congressional service, the U.S. Constitution must be amended. The Court stated that it was

> firmly convinced that allowing the several States to adopt term limits for congressional service would effect a fundamental change in the constitutional framework. Any such change must come not by legislation adopted either by Congress or by an individual State, but rather—as have other important changes in the electoral process—through the Amendment procedures set forth in Article V.

115 S. Ct. at 1871.

Secondly, the Supreme Court rejected term limits supporters' arguments that even if the states may not add qualifications, term limits are a permissible exercise of state power under the Elections Clause, article I, § 4, clause 1, of the U.S. Constitution. The Elections Clause provides: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law

make or alter such Regulations, except as to the Places of chusing Senators."

The Court held that the Elections Clause grants the states authority to enact procedural requirements and safeguards but not authority to impose substantive qualifications that exclude candidates from the ballot. Term limits are substantive qualifications, and the states lack authority to impose them under the Elections Clause.

Therefore, to the degree that the amendments to the Nebraska Constitution impose term limits on holders of congressional offices, they must necessarily be held unconstitutional.

### MEASURE #408's UNCONSTITUTIONAL PORTIONS ARE NOT SEVERABLE

*U.S. Term Limits, Inc. v. Thornton* invalidates Measure #408's imposition of term limits upon federal offices. However, Measure #408 also resulted in amendments which imposed term limits upon a variety of state offices. We now address whether the portions of Measure #408 pertaining to state offices can be severed from that portion pertaining to federal offices. We conclude that Measure #408 presents a single concept and that that concept is not severable.

This is the first time that this court has addressed the issue of whether the unconstitutional portions of a voter initiative measure can be severed from the remaining portions. The Nebraska electorate voted for or against Measure #408 in its entirety. We are now asked to guess whether the voters would have supported or opposed that portion of Measure #408 which sought to impose term limits on state offices.

We have previously addressed whether the valid portions of unconstitutional *statutes* can be severed from the invalid portions. In that situation,

> [t]his court has identified several factors for consideration in determining whether an unconstitutional provision is severable from the remainder of a statute: (1) whether, absent the invalid portion, a workable plan remains; (2) whether the valid portions are independently enforceable; (3) whether the invalid portion was such an inducement to the valid parts that the valid parts would not have passed

without the invalid part; (4) whether severance will do violence to the intent of the Legislature; and (5) whether a declaration of separability indicating that the Legislature would have enacted the bill absent the invalid portion is included in the act.

*Jaksha v. State*, 241 Neb. 106, 129, 486 N.W.2d 858, 873 (1992). See, *State ex rel. Stenberg v. Murphy*, 247 Neb. 358, 527 N.W.2d 185 (1995); *State ex rel. Spire v. Strawberries, Inc.*, 239 Neb. 1, 473 N.W.2d 428 (1991); *Ewing v. Scotts Bluff Cty. Bd. of Equal.*, 227 Neb. 798, 420 N.W.2d 685 (1988); *State ex rel. Douglas v. Sporhase*, 213 Neb. 484, 329 N.W.2d 855 (1983).

Here, the Legislature is not involved. We are addressing constitutional amendments adopted by voter initiative rather than legislation. The intent of a majority of state senators leaving a written record is far different from the intent of hundreds of thousands of individual voters. Nonetheless, the analysis found in the *Jaksha v. State* line of cases may be instructive.

### WORKABLE, ENFORCEABLE PLAN

Under the *Jaksha v. State* analysis, the first and second factors examine whether, absent the invalid portion, a workable and independently enforceable plan remains. "The rule is that when invalid portions [of a statute] are so interwoven with the rest of the act that the act may not be operative with the void portions eliminated, the whole act fails." *State ex rel. Douglas v. Herrington*, 206 Neb. 516, 524, 294 N.W.2d 330, 334 (1980). Accord *City of Scottsbluff v. Tiemann*, 185 Neb. 256, 175 N.W.2d 74 (1970). If part of a statute is held unconstitutional, "the remainder must likewise be held unconstitutional unless the unconstitutional portion can be separated from the provision, leaving the remaining portion or portions independently enforceable." *Fitzgerald v. Kuppinger*, 163 Neb. 286, 295, 79 N.W.2d 547, 554 (1956).

The drafters of Measure #408 interwove term limits applicable to federal offices with term limits applicable to state offices. The petition purported to amend four existing sections of the Constitution and to add four new sections. In amending

the sections of the Constitution dealing with the terms of office for legislators, the Lieutenant Governor, the Secretary of State, and various other elected officials, the petition drafters incorporated by reference the proposed constitutional amendment, article XV, § 20, pertaining to federal offices. See text of petition, article III, § 8; article IV, § 3; and article VII, § 15. As enacted, the amendments pertaining to state offices continue to incorporate by reference the constitutional amendment relating to congressional offices. However, under *U.S. Term Limits, Inc. v. Thornton*, ____ U.S. ____, 115 S. Ct. 1842, 131 L. Ed. 2d 881 (1995), we have declared article XV, § 20, to be void.

Thus, the constitutional amendments imposing term limits upon state offices expressly intertwine the clearly unconstitutional language of article XV, § 20, with the amendments relating to state offices. After article XV, § 20, is stricken in its entirety, are the remaining amendments independently workable and enforceable?

If we were to strike all references to article XV, § 20, from the amendments relating to state offices, those amendments might become more intelligible than as written. In fact, the drafters of Measure #408 were unable to explain what they hoped to accomplish by incorporating congressional term limits in amendments relating to the Legislature, executive offices, et cetera. Only the last sentence of article XV, § 20, has any possible relevance to the amendments imposing term limits on state offices, since that sentence provides a "grandfather" clause for incumbents.

Appellees argue that the references to article XV, § 20, were merely clerical errors in an initiative petition and that the references should be disregarded. Whether the appellees would wish us to disregard the grandfather clause as well was not argued.

The purpose of the *Jaksha v. State* severability analysis is to save the constitutional portions of a workable, independently enforceable statutory plan after a portion of the plan has been found unconstitutional. The severability analysis has not been used to revise careless drafting or to correct clerical errors.

INDUCEMENT

Under the *Jaksha v. State* severability analysis, we must also examine whether the unconstitutional portion was such an inducement that the constitutional portions would not have passed without it. Assuming that we could revise and edit the remaining amendments after striking article XV, § 20, those amendments may be saved only if it appears that the unconstitutional part did not constitute an inducement to the passage of the remaining amendments. See *Fitzgerald v. Kuppinger, supra.*

"Inducement as contemplated by the decisions of this court has not been clearly defined. It is thought that it may not be accurately defined but that it must depend upon the character and quality of the action of the Legislature as it appears in the legislation under scrutiny." *Id.* at 294, 79 N.W.2d at 553. Where the expressed legislative intent is not severable, then the inducement cannot be anything less than entire. *Id.*

We are mindful that we are not trying to determine the intent of the Legislature; rather, we are trying to determine the intent of term limits voters. "There is no meaningful way to determine the intent which motivates voters to sign a petition for the submission of an enactment, nor is there any real way to determine the intent of those voters who vote for the adoption of an enactment." *Omaha Nat. Bank v. Spire*, 223 Neb. 209, 224–25, 389 N.W.2d 269, 279 (1986).

Even if there were a meaningful method to determine the intent of those who signed petitions in support of Measure #408, that method might be defeated by a plain reading of that document. In addition to the confusing references to federal offices in the proposed amendments seeking to impose term limits on state offices, the petition's object clause failed to inform signers that the measure applied to state legislators. The amendments were misnumbered, and one of the proposed "new" amendments was already part of our Constitution. How are we to determine the intent of over 350,000 voters in the face of this?

Further, we note the history and operative facts behind the enactment of Measure #408 and the substantial involvement of U.S. Term Limits. We may use historical or operative facts in

connection with the adoption of a constitutional amendment in order to interpret the meaning of the language of the Constitution. *Omaha Nat. Bank v. Spire, supra*. For example, where a legislative act during the Depression to reduce the salaries of more than 50 state officers was invalid as to some, we refused to presume that the Legislature would have intended the act to take effect in part. We stated that had certain officeholders been left out of the proposed legislation, " 'its promoters would have regarded it much as they would have regarded the play of Hamlet with Hamlet left out.' " *State, ex rel. Taylor, v. Hall*, 129 Neb. 669, 697, 262 N.W. 835, 849 (1935). The dominant purpose of the salary reduction act was to effect an immediate and drastic reduction in salaries. Since the act was defeated in its substantial entirety, the entire act had to fall. *Id*.

The record indicates that the imposition of term limits on federal offices was the primary inducement which gained voter support for Measure #408. During oral arguments before this court in this matter, appellees conceded that term limits was one total concept. Clearly, the substantial part of that concept was to place term limits on congressional representatives rather than on local city councils, boards of regents, et cetera.

This conclusion is borne out by the fact that the constitutional amendments imposing term limits upon certain state and local offices can be overridden by the voters. The proposed amendment to article VII, § 15, permits the voters of the state to lengthen, shorten, or eliminate the limitations on the terms of office for the State Board of Education. Proposed amendment article XV, § 19, permits the voters of any city or county to change the term limitations imposed upon city councils and county boards. How these local "overrides" would operate is uncertain, but they do indicate that the term limits initiative was more concerned about federal offices than state and local offices. Further, we note that Measure #408 was amended by its sponsors to entirely remove some state offices from being subjected to term limits.

SEVERABILITY CLAUSE

The fifth factor under *Jaksha v. State*, 241 Neb. 106, 486

N.W.2d 858 (1992), gives deference to any declaration of separability which would indicate that the Legislature would have enacted the bill absent the invalid portion. Measure #408 does contain a severability clause. It reads: "If any of the provisions hereby adopted shall be held void for any reason, the remaining provisions shall continue in full force and effect."

Although the presence of a severability clause is a factor to be considered, it is not, in itself, determinative. "Where sections constituting an inducement for the passage of an act are unconstitutional, the entire act must fall, notwithstanding the saving clause." *Laverty v. Cochran*, 132 Neb. 118, 127, 271 N.W. 354, 359 (1936). See, *Moeller, McPherrin & Judd v. Smith*, 127 Neb. 424, 255 N.W. 551 (1934); *U.S. Term Limits, Inc. v. Hill*, 316 Ark. 251, 872 S.W.2d 349 (1994) (*aff'd sub nom. U.S. Term Limits, Inc. v. Thornton*, ____ U.S. ____, 115 S. Ct. 1842, 131 L. Ed. 2d 881 (1995)).

In *Laverty v. Cochran*, the Legislature had passed an act changing the manner in which various constitutional officers and state employees could post a bond for their office. We held portions of a state bonding act to be unconstitutional as applied to constitutional officers. We then determined that the unconstitutional portions of the bonding act could not be severed from the remaining portions. In so doing, we noted that the act contained a severance clause which provided: " 'Should any section or provision of this act be decided by the courts to be unconstitutional or invalid, the same shall not affect the validity of the act as a whole or any part thereof, other than the part so decided to be unconstitutional.' " *Id.* at 126–27, 271 N.W. at 359. We deemed the severability clause to be expressive of legislative intent as to the separability of the various parts of the bonding act and found it to be an aid to judicial interpretation, but not controlling.

We do not find Measure #408's severability clause to be determinative. First, the severability clause was not printed on the ballots and so was not directly before the voters who approved the amendments. Unless a voter had read the full text of the proposed amendments in a newspaper or had reviewed one of the petitions, that voter was probably unaware of the severability clause.

Second, the severability clause provides that if any of the "provisions" are held void, the remaining "provisions" shall "continue in full force and effect." We are uncertain as to how the drafters meant the term "provision" to be applied to constitutional amendments. We held article XV, § 20, relating to federal offices to be void. Should we try to save the last sentence, the grandfather clause, as a "provision" which shall continue in full force and effect? Or should we strike all references to article XV, § 20?

We conclude that the portions of Measure #408 relating to state offices cannot be severed from those portions found unconstitutional under *U.S. Term Limits, Inc. v. Thornton*, because the unconstitutional portions were a substantial inducement to the enactment of the whole measure and because the unconstitutional portions were intertwined with the allegedly valid portions. Measure #408 must therefore be declared unconstitutional in its entirety.

### Legal Sufficiency of the Petition Form

In their prayer for declarative and injunctive relief, appellants challenged the legal sufficiency of Measure #408's initiative petition due to its numerous technical and clerical errors.

Among the alleged errors are the actions of appellees in (1) failing to file an actual copy of the initiative petition to be used with the Secretary of State prior to circulation as required by § 32–704(2); (2) failing to print a concise statement in large type of the objects to be sought on the petition as required by § 32–703; (3) failing to conform the petition's signature and name lines and spacing to the requirements of Neb. Rev. Stat. § 32–4,156 (Reissue 1993); (4) failing to print in boldface type required warnings to potential supporters regarding the penalties for wrongfully signing a petition as required by Neb. Rev. Stat. § 32–705 (Reissue 1993); (5) failing to provide a signature line for circulators as required by § 32–705; (6) attempting to amend various constitutional articles without specifically setting forth the sections being amended or repealed; (7) using internal references in the petition which incorporated federal term limits, thus rendering Measure #408 unintelligible and garbled; (8) using an object statement which deceptively and inaccurately

identified Measure #408's goal by failing to include state legislators; and (9) failing to file with the Secretary of State a sworn statement containing the names and addresses of all of Measure #408's sponsors as required by § 32-704(2).

The Secretary of State must review a petition for a proposed initiative measure to determine whether the petition satisfies statutory prescriptions regarding the form of an initiative measure. See, *State ex rel. Brant v. Beermann*, 217 Neb. 632, 350 N.W.2d 18 (1984); § 32-705. We have previously described the Secretary of State's duties in the review of initiative petitions to be ministerial in nature. See, *State ex rel. Labedz v. Beermann*, 229 Neb. 657, 428 N.W.2d 608 (1988); *State ex rel. Brant v. Beermann, supra*. The Secretary of State cannot pass on the merits of the initiative measure and can reject the measure only if it is facially invalid or unconstitutional. *State ex rel. Brant v. Beermann, supra*. Generally, the Secretary of State will approve a proposed petition if the statutorily prescribed forms are substantially complied with. *Id*. See § 32-705(5) for statutory provisions regarding initiative petitions.

This general leniency is carried through the entire initiative process in order to preserve the full spirit of the precious right of the people to revise their Constitution. After a successful initiative measure, the Governor of Nebraska simply issues a proclamation and the proposed amendments become part of the Constitution. The Revisor of Statutes then publishes the amendments as they were drafted by the initiative's sponsors. Although the Revisor of Statutes has authority, in preparing supplements to and reissued or replacement volumes of the Revised Statutes, to renumber and rearrange sections, the Revisor cannot change the substantive meaning of any adopted constitutional amendment. See, e.g., *Stuthman v. Stuthman*, 245 Neb. 846, 515 N.W.2d 781 (1994); *State ex rel. Wright v. Pepperl*, 221 Neb. 664, 380 N.W.2d 259 (1986); Neb. Rev. Stat. § 49-705 (Reissue 1993). The Revisor of Statutes is powerless to make substantive corrections and revisions to approved amendments resulting from a successful initiative. For example, the Revisor could not correct the internal cross-references described above.

Our review of the record indicates that at least some of the

alleged errors regarding the legal sufficiency of Measure #408 had also been complained of when the previous term limits proposal, Measure #407, was challenged. For example, Measure #407's object statement also failed to include state legislators, despite the fact that Measure #407 sought to impose term limits upon the Legislature.

We note that sample forms, rather than drafts of the actual petitions to be circulated, were submitted for the Secretary of State's review. The Secretary of State contends that an initiative's sponsors should not be required to retain a printer and prepare a final draft before obtaining his approval. Although the text on the sample petition was identical to that on the circulated petition, we question how the Secretary of State could ascertain that the circulated petition substantially complied with statutory provisions regarding the use of boldface, type size, and spacing if he never saw it prior to circulation. Many of the alleged errors could have been corrected during a ministerial review for substantial compliance without violation of the prohibition against passing on the merit or wisdom of the proposed amendments.

Our disposition of this case makes it unnecessary to rule on the effect of the carelessness evident in the drafting of Measure #408. As demonstrated by this case, any textual error due to careless drafting can become part of our Constitution. Expressing the written will of the people, the Constitution, demands that initiative supporters exercise due care and caution appropriate to the significance of that task.

## CONCLUSION

The district court erred when it failed to grant declaratory relief in favor of appellants. The amendment promulgated by Measure #408 is unconstitutional as it applies to federal offices, and the remaining amendments are so intertwined with the unconstitutional amendment that they, too, must be declared void. The judgment of the district court is reversed.

REVERSED.

WRIGHT, J., not participating.