REQUESTED BY: Senator Kate Witek
You have requested an Attorney General's Opinion as to the constitutionality of a proposed amendment to the State Constitution directing the placement of descriptive language on ballots regarding certain candidates' positions and past votes on the issue of term limits.
I. Proposed Amendment
As set forth in your request letter, the proposed amendment you are considering introducing provides, in part, as follows:
 We, the People of the State of Nebraska, have chosen to amend the state constitution to inform voters regarding incumbent and non-incumbent federal and state candidates' support for a Congressional Term Limits Amendment to the United States Constitution. Said Congressional Term Limits Amendment states as follows: "No person shall serve the office of United States Representative for more than three terms, but upon ratification of this amendment no person who has held the office of United States Representative or who then holds the office shall serve for more than two additional terms. No person shall serve the office of United States Senator for more than two terms, but upon ratification of this amendment no person who has held the office of United States Senator or who then holds the office shall serve in the office for more than one additional term. This article shall have no time limit within which it must be ratified to become operative upon the ratification of the legislatures of three-fourths of the several States."
 We, the Voters of the State of Nebraska, hereby instruct each member of our congressional delegation to use all of his or her delegated powers to pass the Congressional Term Limits Amendment set forth above. All primary and general election ballots shall have printed the information "DISREGARDED VOTER INSTRUCTION ON TERM LIMITS" adjacent to the name of any United States Senator or Representative who: (1) fails to vote in favor of the proposed Congressional Term Limits Amendment set forth above when brought to a vote or; (2) fails to second the proposed Congressional Term Limits Amendment set forth if it lacks for a second before any proceeding of the legislative body or; (3) fails to propose or otherwise bring to a vote of the full legislative body the proposed Congressional Term Limits Amendment set forth above if it otherwise lacks a legislator who so proposes or brings to a vote of the full legislative body the proposed Congressional Term Limits Amendment set forth above or; (4) fails to vote in favor of all votes bringing the proposed Congressional Term Limits Amendment set forth above before any committee or subcommittee of the respective house upon which he or she serves or; (5) fails to reject any attempt to delay, table, or otherwise prevent a vote by the full legislative body of the proposed Congressional Term Limits Amendment set forth above or; (6) fails to vote against any proposed constitutional amendment that would establish longer term limits than those in the proposed Congressional Term Limits Amendment set forth above regardless of any other actions in support of the proposed Congressional Term Limits Amendment set forth above or; (7) sponsors or cosponsors any proposed constitutional amendment that would increase term limits beyond those in the proposed Congressional Term Limits Amendment set forth above, or; (8) fails in any way to ensure that all votes on Congressional Term Limits are recorded and made available to the public. The information "DISREGARDED VOTER INSTRUCTION ON TERM LIMITS" shall not appear adjacent to the names of incumbent candidates for Congress if the Congressional Term Limits Amendment set forth above is before the states for ratification or has become part of the United States Constitution.
 Non-incumbent candidates for United States Senator or Representative, and the state legislature shall be given an opportunity to take a "Term Limits" pledge regarding Term Limits each time they file to run for such office. Those who decline to take the "Term Limits" pledge shall have the information "DECLINED TO TAKE PLEDGE TO SUPPORT TERM LIMITS" printed adjacent to their name on every primary and general election ballot. The "Term Limits" pledge shall be offered to non-incumbent candidates for United States Senator or Representative, and the state legislature until a Constitutional Amendment which limits the number of terms of United States Senators to no more than two and United States Representatives to no more than three shall have become part to our United States Constitution. The "Term Limits" pledge that each non-incumbent candidate, set forth above, shall be offered is as follows: "I support term limits and pledge to use all my legislative powers to enact the proposed Congressional Term Limits Amendment. If elected, I pledge to vote in such a way that the designation "DISREGARDED VOTER INSTRUCTION ON TERM LIMITS" will not appear adjacent to my name. Signature of Candidate.
 We, the Voters of the State of Nebraska, hereby instruct each member of the state legislature to use all of his or her delegated powers to pass the Article V application to Congress set forth herein, and to ratify, if proposed, the Congressional Term Limits Amendment set forth above. Said Article V application states as follows: "We, the People and Legislature of the State of Nebraska, due to our desire to establish term limits on Congress, hereby make application to Congress, pursuant to our power under Article V of the United States Constitution to call a convention for proposing amendments to the Constitution." All primary and general election ballots shall have printed the information "DISREGARDED VOTER INSTRUCTION ON TERM LIMITS" adjacent to the name of any respective member of the state legislature who: (1) fails to vote in favor of the application set forth above when brought to a vote or; (2) fails to second the application set forth if it lacks for a second or; (3) fails to vote in favor of all votes bringing the application set forth above before any committee upon which he or she serves or; (4) fails to propose or otherwise bring to a vote of the full legislative body the application set forth above if it otherwise lacks a legislator who so proposes or brings to a vote of the full legislative body the application set forth above or; (5) fails to vote against any attempt to delay, table, or otherwise prevent a vote by the full legislative body of the application set forth above or; (6) fails to vote against any proposed constitutional amendment that would establish longer term limits than those in the application set forth above regardless of any other actions in support of the application set forth above or; (7) fails in any way to ensure that all votes on the application set forth above are recorded and made available to the public or; (8) fails to vote against any change, addition or modification to the application set forth above or; (9) fails to vote in favor of the Congressional Term Limits Amendment set forth above if it is sent to the states for ratification or; fails to vote against any term limits amendment with longer terms if such an amendment is sent to the states for ratification. The information "DISREGARDED VOTER INSTRUCTION ON TERM LIMITS" shall not appear adjacent to the names of candidates for the state legislature as required by any of subsections (1) through (7) immediately above if the State of Nebraska has made application to Congress for a convention for proposing amendments to the Constitution pursuant to this law and such application has not been withdrawn or, the Congressional Term Limits Amendment set forth above has been submitted to the states for ratification. The information "DISREGARDED VOTER INSTRUCTION ON TERM LIMITS" shall not appear adjacent to the names of candidates for the state legislature as required by any of subsections (8) through (9) immediately above if the State of Nebraska has ratified the Congressional Term Limits Amendment set forth above. The information "DISREGARDED VOTER INSTRUCTION ON TERM LIMITS" shall not appear adjacent to the names of candidates for the state legislature as required by any of subsections (1) through (9) if the Congressional Term Limits Amendment set forth above has become part of the United States Constitution.
Thus, the proposed amendment would place descriptive language on the ballot regarding the failure of certain elected officials and candidates to adhere to the people's instructions regarding the issue of term limits.
II. Background
A. Congressional Term Limits
In 1992 and again in 1994, Nebraska voters overwhelmingly approved an amendment proposed by initiative petition that imposed limits on the number of times candidates for U.S. House and Senate seats could appear on the ballot.[1] The first vote of the people was nullified by the Nebraska Supreme Court after term limit opponents challenged whether the petition signature requirement had been met to properly place the issue before the voters. Duggan v. Beermann, 245 Neb. 907,515 N.W.2d 788 (1994) (Duggan I). The second vote of the people was effectively nullified (as to Congressional term limits) by the United States Supreme Court in U.S. TermLimits, Inc. v. Thornton and Bryant v. Hill, ___ U.S. ___,115 S.Ct. 1842 (1995). See Duggan v. Beermann,249 Neb. 411, 426-429, 544 N.W.2d 68, (1996) (Duggan II). In U.S. Term Limits, the Court (on a 5-4 vote) held that States could not limit the number of terms served by members of Congress because all of the permissible requirements or qualifications for those offices are set forth in Article I of the Constitution of the United States and cannot be added to by the States. Consequently, term limits on members of Congress may be imposed only through an amendment to the U.S. Constitution.
B. Past Use of Descriptive Ballot Language
 1. Selection of U.S. Senators
Descriptive ballot language of a nature similar to that contained in the proposed amendment is not a new concept. In 1909, the Nebraska Legislature adopted H.R. 1, introduced by State Representative Humphrey. This statute placed descriptive language following the names of legislative candidates stating their position on selection of U.S. Senators. This provision arose as part of the movement that successfully led to the direct election of U.S. Senators through an amendment to the U.S. Constitution in 1913. The 1909 statute provided as follows:
 An Act to secure a more certain selection of the people's choice for United States Senator, to provide for a form of statement in regard to election of United States Senator to be made in their nominating petitions by candidates for legislative nominations at the primaries and to prescribe the form of ballot and statements thereon to be used at the primaries for the selection of legislative candidates.
 Be it Enacted by the Legislature of the State of Nebraska:
 Section 1. (Nomination papers, legislative candidates). Any elector seeking nomination as a candidate for the legislature at the primaries where such candidates are chosen may include in the application to have his name placed upon the official primary ballot provided for in Section 5866 of Cobbey's Annotated Statutes for 1907 any one of the two following statements, but if he does not do so the officer with whom the application is filed shall not, on that account, refuse to file his petition or place his name on the official ballot:
STATEMENT NO. 1
 I hereby state to the people of Nebraska, as well as to the people of my legislative district, that during my term of office I will always vote for that candidate for United States senator in Congress who has received the highest number of the people's votes for that position at the general election next preceding the election of a senator in Congress, without regard to my individual preference.
 
(Signature of the candidate for nomination.)
 If the candidate shall be unwilling to sign the above statement, then he may give the following statement as a part of his petition:
STATEMENT NO. 2
 During my term of office I shall consider the vote of the people for United States senator in Congress as nothing more than a recommendation, which I shall be at liberty to wholly disregard, if the reason for doing so seems to me to be sufficient.
 
(Signature of the candidate for nomination.)
 Section 2. (Ballot. Legislative candidate.) That part of the official primary election ballot which contains the names of candidates for legislative nominations shall have printed thereon, immediately following the names of those candidates who applications include Statement No. 1, the following words, "promises to vote for people's choice for United States senator" and immediately following the names of those candidates whose applications contain Statement No. 2 the following words, "will not promise to vote for people's choice for United States senator." That form of that part of the ballot containing the names of those who are candidates for legislative nomination shall be substantially as follows:
 For State Senator from th district. Vote for .
 Richard Smith, promises to vote for people's choice for U.S. Senator.
William Jones.
 For Representatives from th district. Vote for .
 Wilbur Abie, promises to vote for people's choice for U.S. Senator.
William A. Adams.
 Frank Alger, will not promise to vote for people's choice for U.S. Senator.
Elton Ankeny.
1909 Neb. Laws, House Roll No. 1, Ch. 51 at p. 252-254 (codified at Cobbey's Annotated Statute § 5906). Under the provisions of this statute, the candidate had the option of having the descriptive language placed after his or her name, but his or her name could appear with no descriptive language, as shown in the above example.
2. Convention Endorsements
Nebraska primary election ballots also once contained language following the names of candidates who were endorsed by the pre-primary conventions of the political parties. Following the endorsed candidate's name would appear "Endorsed by [First District Republican Party] Convention" or "Endorsed by [Democratic State Party] Convention." See Neb. Rev. Stat. § 32-1139.01 (R.S. 1943). Only the top two candidates receiving at least 25% of the pre-primary convention votes were entitled to this designation on the primary ballot. Id.See also 1945-46 Rep. Att'y Gen. 176, 177.
III. Constitutional Analysis
The issue presented is whether placement of descriptive language on ballots following candidates' names violates any constitutional provision. In analyzing this issue, one must avoid the temptation to mistake recent tradition and familiarity with constitutional law. We note that the very existence of a state-printed ballot is a legislative innovation. As the U.S. Supreme Court has pointed out, "until the late 1800's, all ballots cast in this country were write-in ballots. The system of state-prepared ballots, also known as the Australian ballot system, was introduced in this country in 1888. . . Prior to this, voters prepared their own ballots or used preprinted tickets offered by political parties." Burdick v.Takushi, 112 S.Ct. 2059, 2070 (1992).
A. U.S. Constitution
As to ballots for Congressional elections, the validity of the proposed amendment is governed by Article I, § 4, cl. 1
of the U.S. Constitution. This section provides that states may prescribe "The Times, Places and Manner of holding Elections for [U.S.] Senators and Representatives. . . ." This provision expressly authorizes Nebraska to regulate the manner of its elections for members of Congress. See Burdick v.Takushi, 112 S.Ct. 2059, 2063 (1992). Under this provision, how Nebraska conducts its elections is within its discretion so long as it does not violate some other provision of the U.S. Constitution. See U.S. Term Limits, 115 S.Ct. at 1868
(invalidating ballot access restrictions deemed to constitute additional qualifications in violation of Article I). Seealso Eu v. San Francisco Democratic Comm., 489 U.S. 214, 222
(1989) ("A state's broad power to regulate the . . . manner of elections does not extinguish the state's responsibility to observe the limits established by the First Amendment. . . .") (quoting Tashijian v. Republican Party of Connecticut,479 U.S. at 217).
The proposed amendment states in its opening clause that its purpose is to inform voters regarding candidates' positions on Congressional term limits. Under the First Amendment, states may generally enact ballot regulations which help the electorate make informed decisions. The U.S. Supreme Court has held that "`there can be no question about the legitimacy of theState's interest in fostering informed and educated expressionsof the popular will. . . .'" Tashijian v. RepublicanParty of Connecticut, 479 U.S. 220, 107 S.Ct. 544, 551
(1986) (quoting Anderson v. Celebrezze,460 U.S. at 796) (emphasis added).[2]
Significantly, the Supreme Court made this statement in the context of its discussion of the role of political party labels on election ballots. Political party labels are themselves a form of descriptive ballot language. The Court noted that "to the extent that party labels provide a shorthand designation ofthe views of party candidates on matters of public concern, the identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise." Id. at 552. Seealso Twin Cities Area New Party v. McKenna, 73 F.3d 196, 200
(8th Cir. 1996), cert. granted 116 S.Ct 1846 (1996) ("The Supreme Court has recognized that party labels provide a shorthand designation of the views of party candidates on matters of public concern. . . .").
Descriptive ballot language in the form of political labels is placed on ballots in every partisan political race by statute.See, e.g., Neb. Rev. Stat. §§ 32-809, 814, 815 (1994). Nebraska law provides that nonpolitical candidates go on the ballot only as individuals, while political candidates are listed with their party label. Petition candidates are designated on the ballot as having been nominated by petition.
It is important to note that political parties are not part of our constitutional framework, and have no constitutional basis beyond the right of political association. Placement of party labels on ballots is a form of descriptive language meant to inform voters. Voters have long been accustomed to descriptive language such as "Republican" or "Democrat" following candidates' names. Some past political party names were even more descriptive, such as "Free Silver", "Socialist Workers", "People's Independent", or "Prohibition." New party names are also often descriptive, such as "Reform" and "Green." A candidate could, if otherwise qualified, run on the "Term Limit" ticket or the "Experience Counts" ticket. Party names are intentionally chosen to convey a message to voters. In the case of the major parties, they provide the voter at least a general idea of where the candidate stands on a wide variety of issues.
We also note that the United States Supreme Court has held that political candidates can be required by law (within the bounds of the First Amendment) to disclose where their campaign money comes from and how it is spent. Buckley v.Valeo, 424 U.S. 1, 66 (1976). Although this information is not printed on the ballot, it is nonetheless required by law to be supplied to voters for the purpose of assisting them in identifying the philosophy of the candidate. The Court stated, "disclosure provides the electorate with information as to where political campaign money comes from and how it is spent by the candidate' in order to aid voters in evaluating those who seek federal office. It allows voters to place each candidate inthe political spectrum more precisely than is often possiblesolely on the basis of party labels and campaign speeches."Id. at 66-67 (emphasis added). Similarly, the Court stated, "In many situations the label `Republican' or `Democrat' tells a voter little." Id. at 70 (upholding campaign disclosure requirements in order to inform the voters of the interest that specific candidates represent).
The use of descriptive ballot language as proposed by the amendment under consideration is legally indistinguishable from party labels and is intended to assist voters in making informed decisions. We conclude, therefore, the proposed amendment would not be found by a court to violate the First Amendment.
It is also our opinion that no other constitutional provision prohibits States from placing descriptive language on ballots as provided by the proposed amendment. The proposed language is not an additional qualification for members of Congress since it does not affect the ability of candidates to stand for Congress.U.S. Term Limits, 115 S.Ct. at 1868. It is not a violation of the Equal Protection Clause, since all similarly-situated candidates are subject to the same rules and would receive similar treatment. Reed v. Reed,404 U.S. 71, 75 (1971). We also find no liberty or property interest improperly infringed by accurately informing voters of candidate's views or actions.
The only concern we have identified with the proposed amendment relates not to its facial validity, but to its application. The amendment makes the Secretary of State responsible for making an accurate determination as to whether a candidate shall have descriptive language adjacent to his or her name on the ballot based, in part, on votes taken by members of Congress. Although the proposed amendment is very detailed, it is possible that a dispute could arise as to the meaning of a particular vote and its effect on the Secretary's duties. We also note, however, that the proposed amendment also contains an appeal procedure which may be sufficient to deal with this problem in the event it ever occurs.
B. Nebraska Constitution
Since the proposed amendment also affects legislative elections, which are outside the scope of the Elections Clause of the U.S. Constitution, the proposed amendment would also be subject to scrutiny under the Nebraska Constitution. However, since the proposed language is itself a constitutional provision, it would necessarily set its own standard unless it could not coexist with other provisions of the state constitution. In any event, we see no existing state constitutional barrier to the proposed language.
Neb. Const. art. III, § 7 expressly prohibits certain specified descriptive language on ballots for legislative elections ("Each member shall be nominated and elected in a nonpartisan manner and without any indication on the ballot that he or she is affiliated with or endorsed by any political party or organization."). However, this provision does not prohibit the descriptive language in question.
The State free speech clause contained in Neb. Const. art. I, § 5 is not offended by the amendment for the reasons discussed above regarding the First Amendment. Likewise, the proposed language does not create new qualifications or disqualifications in addition to those set for members of the Legislature under article III, §§ 8, 9.
The proposed amendment would not constitute a "special law" under article III, § 18 which prohibits special laws for the opening and conducting of any election, since it is not a legislative act, and since it operates alike on all persons of a reasonably constituted class. See Baker v. Moorhead,103 Neb. 811, 174 N.W. 430 (1919).
Finally, we see no inconsistency between the proposed language and Neb. Const. art. I, § 22 which provides that "all elections shall be free. . . ." See State v.Junkin, 85 Neb. 1, 122 N.W. 473 (1909).
Conclusion
In conclusion, the proposed amendment placing descriptive language on ballots regarding candidates' positions and past votes on the issue of term limits does not, on its face, violate any provision of the Constitution of the United States or the State of Nebraska.
Sincerely yours,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
Approved By:
Don Stenberg
Attorney General
[1] Initiative Petition Measure No. 407 was approved by a vote of 481,048 (68%) to 224,114 (32%) in 1992. Initiative Petition Measure No. 408 was approved on November 8, 1994 by a vote of 359,774 (68%) to 171,894 (32%).
[2] The Nebraska Supreme Court has acknowledged that "the people of Nebraska have expressed, as evidenced by their vote, that it is their will that the Constitution be amended as called for in the initiative petition [placing term limits on certain elected officials]." Duggan v. Beermann, 245 Neb. 115.