TIMOTHY DUGGAN, APPELLANT, V. ALLEN J. BEERMANN,
SECRETARY OF STATE, AND NEBRASKANS FOR TERM LIMITS, A
PETITION SPONSOR, APPELLEES.

515 N.W.2d 788

Filed May 13, 1994.   No. S-92-907.

Alan E. Peterson and Terry R. Wittler, of Cline, Williams, Wright, Johnson & Oldfather, for appellant.

Don Stenberg, Attorney General, L. Jay Bartel, and Charles E. Lowe for appellee Beermann.

William E. Morrow, Jr., of Erickson & Sederstrom, and John G. Kester, Terrence O'Donnell, and Dennis M. Black, of Williams & Connolly, for appellee Nebraskans for Term Limits.

BOSLAUGH, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and SIEVERS, Chief Judge, and CONNOLLY and HANNON, Judges.

LANPHIER, J.

Timothy Duggan appeals from the ruling of the Lancaster County District Court denying him injunctive and declaratory relief. Duggan sought to enjoin appellee Secretary of State Allen J. Beermann from placing ballot measure No. 407

(Measure #407), the "term limits initiative," on the November 1992 general election ballot. Duggan also sought to have the measure declared invalid. Duggan contended that the initiative petition, filed with the Secretary of State by appellee Nebraskans for Term Limits, (1) had an insufficient number of signatures; (2) was unconstitutional on its face, adding to the "standing qualifications" for U.S. Representatives and Senators; and (3) contained an invalid object clause. We hold that an insufficient number of signatures were submitted and, accordingly, reverse the judgment of the district court.

## BACKGROUND

On January 17, 1992, Nebraskans for Term Limits filed with the Secretary of State the proposed initiative petition. The petition, subsequently approved by the voters, sought to amend the Nebraska Constitution to limit various state officials to a maximum number of consecutive terms in a respective office. It also sought to amend the Nebraska Constitution to limit the number of consecutive elections in which certain candidates for the U.S. House of Representatives or the U.S. Senate would be eligible to file for election or have their names placed on a Nebraska official ballot.

On July 3, 1992, Nebraskans for Term Limits filed with the Secretary of State all the pages of the petition bearing signatures. On August 21, the Secretary of State certified the petition as valid and sufficient and ordered that the initiative question be placed on the general election ballot November 3. On August 31, Duggan, a citizen of and registered voter in the State of Nebraska, initiated this action. The district court rendered its decision dismissing Duggan's action on September 28.

## ASSIGNMENTS OF ERROR

Duggan asserts the district court erred in the following respects: (1) in concluding that the number of signatures required for a valid initiative petition to amend the Nebraska Constitution was not to be measured by the number of registered voters as explicitly set forth in Neb. Const. art. III, § 2; (2) in failing to conclude that the criterion previously used based on the number of votes cast for Governor in the

preceding election contained in Neb. Const. art. III, § 4, was repealed by implication by the 1988 amendment of Neb. Const. art. III, § 2; (3) in finding the quantity of signatures sufficient; (4) in concluding that the constitutionality of the proposed amendment was not a justiciable issue; (5) in failing to conclude that Measure #407 is unconstitutional on its face; and (6) in declining to enter a declaratory judgment that the signatures were insufficient under Neb. Const. art. III, § 2, and that the ballot measure is facially unconstitutional.

## STANDARD OF REVIEW

In equity actions, an appellate court reviews the factual findings de novo on the record and reaches a conclusion independent of the findings of the trial court. *Latenser v. Intercessors of the Lamb, Inc., ante* p. 337, 513 N.W.2d 281 (1994). An appellate court has an obligation to reach its own independent conclusions as to questions of law. *Goeke v. National Farms, Inc., ante* p. 262, 512 N.W.2d 626 (1994).

## MOOTNESS

We will address the Secretary of State's assertion that this case should be dismissed as moot, before addressing Duggan's assigned errors.

A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation. *Maack v. School Dist. of Lincoln*, 241 Neb. 847, 491 N.W.2d 341 (1992). As a general rule, a moot case is subject to summary dismissal. *State ex rel. Bouc v. School Dist. of City of Lincoln*, 211 Neb. 731, 320 N.W.2d 472 (1982).

As stated above, Duggan brought this action in Lancaster County District Court to enjoin the Secretary of State from placing the term limits initiative on the November 3, 1992, general election ballot. The district court ruled against Duggan and denied the injunction. The Secretary of State placed the measure on the November 3, 1992, ballot. The measure was voted on and approved.

The Secretary of State argues that this case is moot because an injunction cannot prevent what has already occurred, and the measure has already been placed on the ballot. It is true that

equity will not issue an injunction when the act complained of has been committed and the injury has been done. *Koenig v. Southeast Community College*, 231 Neb. 923, 438 N.W.2d 791 (1989). However, in addition to seeking an injunction against the Secretary of State, Duggan requested a judgment from the district court that the number of signatures submitted was deficient as a matter of law and declaring the measure invalid. Although the injunction is moot, as that remedy can no longer provide Duggan with the relief he requested, the requested declaratory judgment as to the number of signatures is not. Thus, that issue at least is not moot.

## NUMBER OF SIGNATURES REQUIRED

Duggan first argues that the number of signatures submitted by Nebraskans for Term Limits and approved by the Secretary of State did not meet the requirements of the Nebraska Constitution for placing an initiative petition on a ballot. Duggan submits that since the number was insufficient, the district court should have granted his injunction and should have declared the measure invalid.

Duggan does not contest the quality or number of signatures submitted, but disputes the number legally required. Duggan submits that Neb. Const. art. III, § 2, alone provides for the number of signatures required. The Secretary of State contends that Neb. Const. art. III, §§ 2 and 4, provide for the number of signatures required.

Neb. Const. art. III, § 2, in pertinent part, states:

The first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature. This power may be invoked by petition wherein the proposed measure shall be set forth at length. If the petition be for the enactment of a law, it shall be signed by seven percent of the registered voters of the state, and if the petition be for the amendment of the Constitution, the petition therefor shall be signed by *ten percent of such registered voters*. In all cases the registered voters signing such petition shall be so distributed as to include five percent of the registered voters of each of

two-fifths of the counties of the state . . . .
(Emphasis supplied.)

Neb. Const. art. III, § 4, in pertinent part, states: "The whole number of *votes cast for Governor at the general election next preceding the filing of an initiative or referendum petition* shall be the basis on which the number of signatures to such petition shall be computed." (Emphasis supplied.) Succinctly, article III, § 2, provides that the number of signatures required is 10 percent of registered voters. Article III, § 4, provides that the number of signatures would be based on the votes of the last gubernatorial election.

According to the Secretary of State, the Nebraska Constitution, in particular article III, §§ 2 and 4, required 58,654 valid signatures, distributed to include 5 percent of the total vote for Governor in the 1990 election from each of at least 38 counties. The Secretary of State certified that those requirements were met by Nebraskans for Term Limits' submission of 62,012 valid signatures.

Duggan would not have the Secretary of State compute the number of required signatures upon the basis of the number of those who voted in the last gubernatorial election, but, rather, upon the number of registered voters on the date upon which the signatures were due.

Duggan argues that the above-quoted sentence of article III, § 4, was repealed by implication in 1988 when article III, § 2, was amended. Prior to the 1988 amendment, article III, § 2, referred to "electors," rather than "registered voters."

The Nebraska Constitution may be amended by implication only where the language adopted by the voters conflicts with existing constitutional provisions. *Cunningham v. Exon*, 207 Neb. 513, 300 N.W.2d 6 (1980). The Nebraska Constitution, as amended, must be read as a whole. *Jaksha v. State*, 241 Neb. 106, 486 N.W.2d 858 (1992). A constitutional amendment becomes an integral part of the instrument and must be construed and harmonized, if possible, with all other provisions so as to give effect to every section and clause as well as to the whole instrument. *Id*. A clause in a constitutional amendment will prevail over a provision in the original instrument inconsistent with the amendment only when they

relate to the same subject, are adopted for the same purpose, and cannot be enforced without substantial conflict. *Cunningham v. Exon, supra.*

Sections 2 and 4 of article III both relate to the same subject, an initiative petition. Both sections have the same purpose, requiring a given number of signatures before placing a petition on the ballot. The point of contention is whether both sections can be enforced without substantial conflict.

The plain language of article III, § 2, as amended by the voters clearly requires that a petition for the amendment of the Constitution be signed by 10 percent of the registered voters. This language is unambiguous. It needs neither explanation nor qualification. Yet article III, § 4, refers to voters in the last gubernatorial election. As discussed above, we have a duty to reconcile article III, § 2, with article III, § 4, if both sections can be enforced without substantial conflict.

The Secretary of State attempts to reconcile § 2 with § 4 based upon the following statement contained in *Omaha Nat. Bank v. Spire*, 223 Neb. 209, 218, 389 N.W.2d 269, 275 (1986): "[A] petition must be signed by *electors* equal in number to at least 7 percent or 10 percent of '[t]he whole number of votes cast for Governor at the general election next preceding the filing of an initiative or referendum petition . . . .' Neb. Const. art. III, § 4." (Emphasis supplied.) Recognizing that we decided *Omaha Nat. Bank* prior to the 1988 amendment of article III, § 2, the Secretary of State suggests that we merely replace the word "electors" with the words "registered voters," as was done by the amendment. The statement would then read: "A petition must be signed by *registered voters* equal in number to at least 7 percent or 10 percent of the whole number of votes cast for Governor at the general election next preceding the filing of an initiative or referendum petition." This attempt at reconciliation is untenable.

Our statement in *Omaha Nat. Bank* was dicta. Interpretation of those sections was unnecessary to the decision. See *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989) (a case is not authority for any point not necessary to be passed on to decide the case or not specifically raised as an issue addressed by the court). Also,

prior to 1988, when article III, § 2, referred to "electors," it was possible to harmonize § 2 with § 4, as *Jaksha v. State, supra,* obliges us to do. Since 1879, when "electors" was first defined under Nebraska statutes, it has had a variety of meanings. See, 1879 Neb. Laws, § 3, p. 240; 1917 Neb. Laws, ch. 30, § 1, p. 95; 1921 Neb. Laws, ch. 92, § 1, p. 323; 1951 Neb. Laws, ch. 99, § 2, p. 270; 1971 Neb. Laws, L.B. 49, § 1; 1972 Neb. Laws, L.B. 661, § 18; 1972 Neb. Laws, L.B. 920, § 1; 1973 Neb. Laws, L.B. 562, § 1; Neb. Rev. Stat. § 32-102 (Reissue 1988). Broadly defined, an "elector" is "[o]ne who elects or has the right of choice." Black's Law Dictionary 519 (6th ed. 1990). Using this broad definition, it is possible to construe the term "electors" to mean those who voted in the last gubernatorial election, thus harmonizing the sections. However, a similar interpretation of "registered voters" is not plausible. "Registered voters" has a specific, definite meaning: "Persons whose names are placed upon the registration books provided by law as the record or memorial of the duly qualified voters of the state or county." *Id.* at 1284. Doubtless those who voted in the last gubernatorial election were "registered voters," and most still are. However, as the Secretary of State has acknowledged, many who did not vote in the last gubernatorial election are also "registered voters."

Finally, the Secretary of State's proposed reading of the two sections, to the effect that a petition must be signed by registered voters equal in number to at least 10 percent of the whole number of votes cast during the last gubernatorial election would change article III, § 2, to such a degree that article III, § 2, and article III, § 4, are clearly in "substantial conflict."

The magnitude of the change rendered to article III, § 2, by the Secretary of State's proposed interpretation is readily apparent. As of April 17, 1992, there were 885,103 registered voters in the State of Nebraska. Although there is no evidence in the record of how many registered voters there were on July 3, 1992, the date the signatures were due, the Secretary of State was of the opinion that the number of registered voters in the State would have increased after April 17, 1992. Given these facts, we can reasonably assume that if the signatures of 10

percent of the registered voters were required, at least 88,510 signatures would have been necessary. As the Secretary of State would have us read the Constitution, only 10 percent of the number of votes in the last gubernatorial election would have been required; the equivalent of 58,654 signatures, nearly 30,000 fewer.

As stated in *Cunningham v. Exon*, 207 Neb. 513, 300 N.W.2d 6 (1980), when constitutional provisions are in conflict, the later amendment controls. Thus, article III, § 2, which refers to registered voters, repeals the reference in article III, § 4, which refers to those voting in the preceding gubernatorial election.

## CONSTITUTIONAL AMENDMENTS VOID

The number of signatures required for placement of Measure #407 on the ballot by the Nebraska Constitution was equal to 10 percent of the number of registered voters on the date the signatures were to be turned in, July 3, 1992. Although the exact number required on that date cannot be derived from the record before us, the uncontroverted evidence establishes that the number submitted was insufficient. The number of signatures being insufficient, the Secretary of State's placement of the petition on the ballot was erroneous. Notwithstanding this error, the people of Nebraska have expressed, as evidenced by their vote, that it is their will that the Constitution be amended as called for in the initiative petition. See *State v. Winnett*, 78 Neb. 379, 110 N.W. 1113 (1907). See, also, *Swanson v. State*, 132 Neb. 82, 271 N.W. 264 (1937); *State, ex rel. Hall, v. Cline*, 118 Neb. 150, 224 N.W. 6 (1929).

However, we have recognized that a constitution represents the supreme written will of the people regarding the framework for their government. *Jaksha v. State*, 241 Neb. 106, 486 N.W.2d 858 (1992). Moreover, we have recognized that in adopting the Constitution, the people have imposed upon themselves limitations on their ability to amend this fundamental law. *State v. Winnett, supra.* We are concerned with one of those self-imposed limitations, the requirement that a given number of signatures be obtained before submitting the proposed initiative to the voters.

This court has previously addressed situations in which the

people have plainly expressed their will that the Nebraska Constitution be amended, but in which they have failed to comply with self-imposed constitutional limitations. In those instances, we have required "substantial compliance" with the constitutional limitations. See *State v. Winnett, supra.* See, also, *Swanson v. State, supra; State, ex rel. Hall, v. Cline, supra.*

If there was substantial compliance with the requirements of article III, § 2, then we could find in the case at hand that Measure #407 was validly placed on the ballot. However, we cannot say that the submission of at least 30,000 too few signatures constitutes substantial compliance with the provisions of the Nebraska Constitution for an initiative by the people. Therefore, the amendments contained in Measure #407 were not properly placed on the ballot and therefore must be declared void, despite their approval by the voters. This finding obviates the need to address Duggan's remaining assignments of error.

## CONCLUSION

The district court erred when it failed to enjoin the Secretary of State from placing Measure #407 on the November 1992 general election ballot, as there were insufficient signatures submitted. There was not substantial compliance with the Nebraska Constitution's procedural requirements for the adoption of amendments by initiative referendum. The proposed amendments contained in Measure #407 are, therefore, void. The judgment of the district court is reversed and the cause remanded for entry of judgment consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.