Stan **DOBROVOLNY**, Kent **Bernbeck** and Richard **Bellino**, Plaintiffs,

v.

Scott **MOORE**, Secretary of State for the State of Nebraska, Individually and Officially, Defendant.

No. 4:CV96–3262.

United States District Court, D. Nebraska.

Aug. 15, 1996.

John M. Boehm, Lincoln, NE, for Plaintiffs.

L. Steven Grasz, Deputy Attorney General, Dale A. Comer, Assistant Attorney General, Lincoln, NE, for Defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

The plaintiffs filed this action on July 3, 1996 seeking declaratory and injunctive relief challenging the constitutionality of the Nebraska Constitution, Article III, Section 2 as interpreted by the Nebraska Supreme Court in *Duggan v. Beermann,* 245 Neb. 907, 515 N.W.2d 788 (1994). (Filing 1 ¶ 1.) At issue is whether determining the number of signatures required to place an initiative measure on the general election ballot on the date the signatures are due based on the number of registered voters on that date violates the petitioners First Amendment or Due Process rights under the United States Constitution.

Contemporaneous with the filing of their complaint, the plaintiffs moved for a preliminary injunction (filing 2), and pursuant to Federal Rule of Civil Procedure 65(a)(2) I ordered that trial on the merits of this action be consolidated with the hearing on Plaintiffs' Motion for Preliminary Injunction. (Filing 7.)

After a bench trial on the merits of Plaintiffs' complaint, I now set forth the findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52(a).[1]

### I.

I find the material facts to be these:

1. Plaintiffs are Nebraska residents who are supporters and organizers of various initiative petition drives. (Filing 1 ¶¶ 2–4, 6–8.)

a. Plaintiff Kent Bernbeck is co-chair of the Nebraska Term Limits Committee, an organization devoted to the circulation of an initiative petition and passage of a constitutional amendment that would limit the terms of elected officials. (*Id.* ¶ 6.)

b. Plaintiff Stan Dobrovolny is president of Nebraskans for Equal Taxation, an organization devoted to the circulation of an initiative petition and passage of a constitutional amendment regarding property taxes. (*Id.* ¶ 7.)

c. Plaintiff Richard Bellino is a sponsor of the Initiative to Preserve Nebraska Assets and Live Horse Racing which proposes an amendment to the Nebraska Constitution which would legalize gambling. (*Id.* ¶ 8.)

2. The initiative petition organizations referenced in the plaintiffs' complaint have all presented petitions with signatures to the office of the Nebraska Secretary of State in an attempt to place their various initiative proposals on the November 1996 general election ballot in Nebraska. (Exhibit A, Stipulation of fact ¶ 6.)

3. Defendant Scott Moore is a resident of Lincoln, Lancaster County, Nebraska, and is the duly elected and currently serving Secretary of State of the State of Nebraska. (*Id.* ¶ 1.)

4. Under the provisions of Neb.Rev.Stat. § 32–201 (Michie 1995), defendant Scott Moore has authority to decide disputed points of Nebraska election law. (Exhibit A, Stipulation of fact ¶ 3.)

5. Under the provisions of Neb.Rev.Stat. § 32–202 (Michie 1995), defendant Scott Moore has authority to supervise the conduct

---

1. Any finding of fact that is more properly construed as a conclusion of law shall be so construed. Likewise, any conclusion of law that is more properly construed as a finding of fact shall be so construed.

of primary and general elections in this state, and to develop and print manuals and pamphlets dealing with the initiative and referendum process in Nebraska and the nature of individual initiative and referendum measures. (Exhibit A, Stipulation of fact ¶ 2.)

### The Nebraska Initiative Process

6. The State of Nebraska allows its citizens to amend the state constitution through the initiative process. Neb. Const. art. III, §§ 1, 2, 4.

7. The right to the initiative petition process in Nebraska is created by Article III of the Nebraska Constitution, and the pertinent provisions are as follows:

> ... The people reserve for themselves, however, the power to propose laws, and amendments to the constitution, and to enact or reject the same at the polls, independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act, item, section, or part of any act passed by the Legislature.

Neb. Const., art. III, § 1.

> The first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature. This power may be invoked by petition wherein the proposed measure shall be set forth at length. If the petition be for the enactment of a law, it shall be signed by seven percent of the registered voters of the state, and if the petition be for the amendment of the Constitution, the petition therefor shall be signed by ten percent of such registered voters. In all cases the registered voters signing such petition shall be so distributed as to include five percent of the registered voters of each of two-fifths of the counties of the state, and when thus signed, the petition shall be filed with the Secretary of State who shall submit the measure thus proposed to the electors of the state at the first general election held not less than four months after such petition shall have been filed.

Neb. Const., art. III, § 2.

> \* \* \* \* \* \*

> The whole number of votes cast for Governor at the general election next preceding in filing of an initiative or referendum petition shall be the basis on which the number of signatures to such petition shall be computed.

Neb. Const., art. III, § 4.

8. In *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994) the Nebraska Supreme Court held that the number of signatures required by the Nebraska constitution for placement of an initiative measure on the general election ballot is equal to 10 percent of the number of registered voters in Nebraska measured on the date the signatures are turned in to the Secretary of State for certification.

### Registered Voters

9. Each county in Nebraska keeps an up to date public record of the number of registered voters in that county. That information is not available over the telephone, but any member of the public, including the plaintiffs, may review the list of registered voters in person. (Tr. 35:3–25; 66:19–67:16.)

10. In conformance with his duties under Neb.Rev.Stat. § 32–202(9) (Michie 1995) to prepare and transmit reports as required by the National Voting Rights Act of 1993, 42 U.S.C. §§ 1973 *et seq.*, defendant Scott Moore, or staff members in his office under his supervision, compiles listings of the total number of registered voters in the State of Nebraska on a periodic basis. In addition, defendant Scott Moore, or staff members in his office under his supervision, prepare such listings in connection with the canvass books and abstracts for the primary and general elections held in the State of Nebraska. (Exhibit A, Stipulation of fact ¶ 3.)

11. The periodic listings of the total number of registered voters in the State of Nebraska and the canvass books and abstracts of the primary and general elections held in the State of Nebraska are matters of public record which are available to all members of the public including the plaintiffs in this action. (*Id.* ¶ 3.)

12. From the period of time from the November 1994 general election through the

present, defendant Scott Moore, or staff members in his office under the supervision of the Secretary of State, prepared listings of the total number of registered voters in the State of Nebraska on five occasions. All the information in each listing was available to the public, including the plaintiffs in this action. The nature of each listing, the total number of registered voters in Nebraska at that time, and the date that the information became available to the public for each of those five occasions are as follows:

a. Canvass Book, 1994 General Election—919,321 registered voters—available to the public, December, 1994.

b. Periodic survey of registered voters—944,135 registered voters—available to the public, July, 1995.

c. Periodic survey of registered voters—962,869 registered voters—available to the public, January, 1996.

d. Abstract of 1996 Primary Election results—977,342 registered voters—available to the public, May, 1996.

e. Periodic survey of registered voters—989,383 registered voters—available to the public, July 8, 1996.

(*Id.* ¶ 4.)

13. Defendant Scott Moore caused press releases to be issued by his office stating the number of registered voters in Nebraska on May 9, 1996, and on June 12, 1996. True and correct copies of those press releases are in the record. Apart from these two releases, defendant Scott Moore can produce no additional press releases concerning the number of registered voters in Nebraska issued during the time period from January, 1995, through July, 1996. (*Id.*)

14. Subsequent to the periodic survey of registered voters completed in July 1996, defendant Scott Moore announced to the public that 98,938 signatures would be needed to place initiative measures on the ballot for the Nebraska statewide general election to be held in November, 1996. He made that announcement on July 8, 1996. (*Id.* ¶ 5.)

15. Based upon the receipts issued by the staff in the office of the Nebraska Secretary of State, acting under the supervision of defendant Scott Moore, to representatives of each of those petition organizations, those organizations purported to present initiative petitions to the Office of the Secretary of State containing the following numbers of signatures:

a. Nebraska Term Limits Committee—159,334 signatures

b. Nebraskans for Equal Taxation—107,670 signatures

c. Initiative to Preserve Nebraska—133,100 signatures Assets and Live Horse Racing

(*Id.* ¶ 6.)

16. Pursuant to the provisions of Neb. Rev.Stat. § 32–1409 (Michie 1995), defendant Scott Moore is currently in the process of determining the validity and sufficiency of the signatures submitted in connection with each of those initiative petition measures so as to decide whether the constitutional and statutory requirements have been met to place those measures on the November general election ballot. (Exhibit A, Stipulation of fact ¶ 6.)

17. Based upon the Canvass Book prepared by the Nebraska State Board of Canvassers, 586,542 persons voted for Governor at the general election held in November, 1990. (*Id.* ¶ 7.)

18. Based upon the Canvass Book prepared by the Nebraska State Board of Canvassers, 579,561 persons voted for Governor at the general election held in November, 1994. (*Id.*)

19. In 1992, various individuals and entities sponsored an initiative effort to place the Clean Environment Act on the November, 1992, Nebraska general election ballot. That initiative effort proposed a statute which would use the proceeds of certain taxes on cigarettes to establish a program to maintain and restore pure water, air, and land in Nebraska through various means. The Clean Environment Act initiative sponsors presented their initiative petitions to Allen J. Beermann, Nebraska Secretary of State, on July 3, 1992. On September 2, 1992, Mr. Beermann entered an order in which he refused to place the Clean Environment Act on the November general election ballot. The Clean Environment Act petitions contained

40,803 valid signatures, and 41,058 signatures were required to place an initiative proposal for a statute on the 1992 general election ballot under the applicable provisions of the Nebraska Constitution. (*Id.* ¶ 8.)

20. Defendant Scott Moore was deposed, under oath, in *Bernbeck, et al. v. Scott Moore,* United States District Court for the District of Nebraska, Case No. 4:CV96–3263, on July 17, 1996. A true and correct copy of the cover page and pages 66 and 67 of that deposition, including questions posed to defendant Moore and his answers to those questions, is a part of the record. The parties stipulate that this deposition testimony may be considered as testimony of defendant Scott Moore in this action. (*Id.* ¶ 9.)

21. A lawsuit was filed at Docket 530, Page 222, in the District Court of Lancaster County, Nebraska, styled *State of Nebraska ex rel. Don Stenberg, Attorney General of Nebraska v. Scott Moore, Secretary of State of the State of Nebraska.* Trial in that case was held on March 11, 1996, and a true and correct copy of Judge McGinn's final order is a part of the record. Judge McGinn's decision in that case is currently on appeal in the Nebraska Supreme Court as Case No. S96–0697. (*Id.* ¶ 10.) [2]

## II. LAW

■ At issue are questions of law concerning the constitutionality of the Nebraska Supreme Court's construction of sections of the Nebraska Constitution regarding the calculation of the number of signatures required in order to place an initiative on the ballot. A brief history of the relevant Nebraska constitutional provisions is helpful at this point.

### A. History on Number of Signatures Required

Prior to 1988, the number of signatures needed to place an initiative on the ballot in Nebraska was based on the number of votes in the last gubernatorial election. In 1988 Nebraskans amended their constitution to change the terminology in Article III, sec-

tions 2 and 3 from "electors" to "registered voters" when referring to the eligibility of an initiative and referendum petition signatory. See, Pt. I, ¶ 7. Article III, section 4 was unchanged by the 1988 amendment. *Id.*

The 1988 amendment resulted in an apparently unanticipated inconsistency in the Nebraska constitution regarding the base number to be used when calculating how many signatures were necessary. "Succinctly, article III, § 2, provides that the number of signatures required is 10 percent of registered voters. Article III, § 4, provides that the number of signatures would be based on the votes of the last gubernatorial election." *Duggan,* 245 Neb. at 912, 515 N.W.2d at 792. In 1994 the Nebraska Supreme Court was called upon to resolve the inconsistency created by the 1988 change in terminology.

In a unanimous decision the Nebraska Supreme Court held that the conflicting sections of the constitution could not be reconciled and that the most recent amendment was controlling. Therefore, article III, section 2 as amended in 1988 effectively "repeal[ed]" the reference in article III, section 4" which previously required the Secretary of State to ascertain the number of signatures required for an initiative measure to be placed on the ballot to be based upon the votes of the last gubernatorial election. *Id.* at 915, 515 N.W.2d at 793. With this history in mind, I now turn to the plaintiffs' claims in the present case.

### B. Plaintiffs' Claims

In their complaint the plaintiffs allege that because of the Nebraska Supreme Court's ruling in *Duggan,* they are unable to "know the number of signatures required to place an initiative on the ballot until after the deadline for filing such petitions." (Filing 1 ¶ 9.) The plaintiffs assert that this lack of notice "violates freedom of a speech and procedural due process as guaranteed by the First and Fourteenth Amendment[s] to the U.S. Constitution." (*Id.,* ¶ 14.)

2. Essentially, the judge ruled that the constitutional amendment which inadvertently caused the problem in this case contained appropriate explanatory language under relevant Nebraska law.

### 1. First Amendment Claim

The plaintiffs rely on *Meyer v. Grant*, 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988), to support their claim under the First Amendment. In that case the United States Supreme Court concluded that circulating an initiative petition involved core political speech and thus any restriction on that speech was subject to strict scrutiny under the First Amendment. The Court then struck down a Colorado statute making it a felony to pay circulators of initiative petitions. Plaintiffs' reliance on *Meyer v. Grant* is misplaced in this context.

That the plaintiffs cannot know the precise number of signatures they will need in order to have their initiative measures placed on the ballot does not in any way restrict or inhibit their ability to circulate petitions or engage in core political speech. The statute in *Meyer v. Grant* that was invalidated was directly linked to the petition sponsor's speech and efforts to communicate with other voters about proposed legislation. Making it a felony to pay a petition circulator limited the number of voices and hours available for the petition sponsors to convey their message, and also limited the size of the audience that would ultimately be reached. *Id.* at 422–23, 108 S.Ct. at 1892–93. Those limitations in turn made it less likely that the petition drives would obtain the number of signatures necessary to place the measure on the ballot.

The plaintiffs in this case are not faced with any restrictions on how they may communicate their political message. This system may well make it difficult for the sponsors to plan their campaign and efficiently allocate their resources, but it does not limit the means the initiative sponsors may use in communicating their message or in any way limit the content of their message. *See Biddulph v. Mortham*, 89 F.3d 1491, 1500–01 (11th Cir.1996) (per curiam) (*Meyer* and First Amendment scrutiny inapplicable to an initiative process that is merely "burdensome because it is unpredictable and imposes unnecessary costs on initiative sponsors."). For these reasons, the Nebraska Supreme Court's interpretation of the Nebraska Con-stitution, article III, section 2, does not violate Plaintiffs' First Amendment rights.

### 2. Due Process Claim

The plaintiffs' complaint also alleges that the manner in which the required number of signatures for an initiated measure is determined violates their rights to procedural due process. The possession of a protected life, liberty or property interest is a condition precedent to the government's obligation to provide due process of law, and where no such interest exists, there can be no due process violation. *Movers Warehouse, Inc. v. City of Little Canada*, 71 F.3d 716, 718 (8th Cir.1995). For the reasons discussed below I find and conclude that the plaintiffs do not have any such protected interest, and they are therefore not entitled to any procedural due process protections.

In their pretrial brief the plaintiffs contend that a "substantive liberty interest—the right to petition one's government" is violated by the method of determining the required number of signatures. (Pls.' Pretrial Br. at 4.) "The inability to have actual notice of the required number of signatures" prior to the date the signatures are due "is an interference or infringement of the exercise of this liberty interest." (Pls.' Reply to Def.'s Pretrial Br. at 4.)

It is clear that the right to an initiative process is not a right guaranteed by the United States Constitution. *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir.1993) (discussing *Meyer v. Grant*, 486 U.S. 414, 424, 108 S.Ct. 1886, 1893, 100 L.Ed.2d 425 (1988)). It is also clear that once a state confers upon its citizens the right to an initiative, the state may not implement procedures to limit that state created right in contravention of the United States Constitution. *Id.* However, there is an important categorical difference between granting and defining the right to an initiative process in the state constitution and statutory procedures enacted to implement the right so defined by the state constitution.

The principal stated in *Meyer v. Grant* is that a state that adopts an initiative procedure violates the federal constitution if there are *procedures* implemented that unduly re-

strict the federal rights of the citizens who support the initiative. *Meyer v. Grant,* however, does not prohibit Nebraska citizens from creating self-imposed constitutional limitations when defining the scope of the right they are creating.

In a case that involved a challenge to a statutory provision in Colorado restricting participation in the initiative process to registered voters of the state of Colorado, the district court for the District of Colorado found the source of that restriction did not derive from the statute being challenged, but it was a self-imposed restriction the voters of Colorado added to their constitution. *American Constitutional Law Foundation, Inc. v. Meyer,* 870 F.Supp. 995, 1002 (D.Colo.1994).

Because the source of the restriction derived from the Colorado constitution wherein the right itself is granted and defined, the federal court found that while it had authority to review other statutes that merely implemented the right the court did not have the authority to review the scope of the right as defined by the .citizens of Colorado. The court stated:

> The people are the source of the power and they may exercise their sovereign authority to limit the scope of that power so long as there is no discriminatory classification. The Colorado electorate chose to restrict participation in the petitioning process to registered voters. This decision is not subject to any level of review by this court in the context of this case.

*Id.*

Such a conclusion is equally applicable here.

Unlike the statute challenged in *Meyer v. Grant* which limited the right given, the plaintiffs here challenge the very definition of the right conferred. The source of the right to initiate legislation is the Nebraska Constitution as is the requirement that 10 percent of all "registered voters" must sign an initiative petition before the measure may be placed on the ballot. Therefore, in *Duggan* the Nebraska Supreme Court was not called upon to interpret a regulation or statute that would limit the right to the initiative procedure, the court instead ascertained what the right itself meant and what the will of the people was in enacting the constitutional amendment in 1988.

■ What the plaintiffs are really disputing in this case is the Nebraska Supreme Court's interpretation of the Nebraska constitution. However, this court has no authority to second-guess the Nebraska Supreme Court's construction of its own constitution. Simply, but precisely, put "this decision is not subject to any level of review by this court in the context of this case." *American Constitutional Law Foundation, Inc. v. Meyer.* 870 F.Supp. at 1002. *See also Biddulph,* 89 F.3d at 1500 ("The rights [to place an initiative on the ballot] derive from wholly state-created procedures by which issues that might otherwise be considered by elected representatives may be put to the voting populace. The state, having created such a procedure, retains the authority to interpret its scope and availability."); *Reeves v. Hopkins,* 76 F.3d 1424, 1427 (8th Cir.1996) (holding that the "Nebraska Supreme Court is the final arbiter of Nebraska law" and that "it is not the province of federal courts to reexamine state determinations of state law questions.")

■ In summary, the plaintiffs have no federal constitutional right to define the state constitutional right of the initiative contrary to the written will of the people of Nebraska as expressed in the document defining their own government and interpreted by their own high court. Therefore I conclude that the plaintiffs have failed to establish that they have been deprived of a constitutionally protected liberty interest which would entitle them to procedural due process protections.

Accordingly,

IT IS ORDERED that judgment shall be entered by separate document providing in substance that Plaintiffs shall take nothing against the Defendant and this case is dismissed.