STATE OF NEBRASKA EX REL. GREG LEMON, APPELLEE AND
CROSS-APPELLANT, V. THE HONORABLE JOHN A. GALE,
NEBRASKA SECRETARY OF STATE, APPELLANT
AND CROSS-APPELLEE.

721 N.W.2d 347

Filed September 15, 2006. No. S-06-909.

Jon Bruning, Attorney General, L. Jay Bartel, and Dale A. Comer for appellant.

Alan E. Peterson, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., and W. Scott Davis and Jacob P. Wobig, of Baylor, Evnen, Curtiss, Grimit·& Witt, L.L.P., for appellee.

CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and INBODY, Chief Judge, and HANNON, Judge, Retired.

PER CURIAM.

Nebraska Secretary of State John A. Gale refused to place two initiative measures on the ballot for the November 7, 2006, general election, finding that the measures were so similar to three initiative measures submitted at the 2004 election that they contravened the resubmission clause in article III, § 2, of the Nebraska Constitution. Appellee Greg Lemon brought this action in the district court for Lancaster County pursuant to Neb. Rev. Stat. § 32-1412 (Reissue 2004), seeking a writ of mandamus to require Gale to place both measures on the ballot at the 2006 general election. The district court held that one of the measures, referred to as the "K-12 Initiative," was barred by the resubmission clause, but the other, referred to as the "3 Casinos Initiative," was not. The court entered an order requiring Gale to proceed with signature verification on the 3 Casinos Initiative and to forward it to the Attorney General for ballot title preparation. We expedited Gale's timely appeal, and Lemon cross-appealed. We conclude that a justiciable issue is presented and hold that the resubmission clause bars both initiative measures from being placed on the ballot for the November 7, 2006, general election and enter orders accordingly.

## I. BACKGROUND

Lemon, a resident of and registered voter in Lancaster County, Nebraska, is the president of the Committee for Better Schools and More Jobs in Nebraska, Inc., a Nebraska non-profit corporation serving as a ballot committee. Prior to July 7, 2006, the committee submitted to Gale three initiatives for consideration by the people of Nebraska at the general election to be held on November 7. One initiative, the 3 Casinos Initiative, proposes to amend article III, § 24, of the Nebraska Constitution to permit one casino in each of Nebraska's three congressional

districts. Each casino would be authorized, regulated, and licensed by the State. The second initiative, the K-12 Initiative, would statutorily earmark the use of tax proceeds from constitutionally authorized casino gambling by providing that a preponderance of the proceeds be used to support K-12 education in Nebraska. The third initiative was subsequently withdrawn and is not at issue in this action.

The committee contends that it has obtained sufficient valid signatures from registered voters, sufficiently distributed by county, to qualify each of the two initiative measures for consideration by the people at the November 7, 2006, election. On July 12, Gale refused to commence the verification process of the signatures on the initiative petitions and refused to place the initiative measures on the November 7 ballot. Gale determined that the 2006 initiatives were so similar to three initiatives presented to voters at the November 2004 election that they violated the resubmission clause found in the Nebraska Constitution, which clause provides: "The same measure, either in form or in essential substance, shall not be submitted to the people by initiative petition, either affirmatively or negatively, more often than once in three years." Neb. Const. art. III, § 2. The three initiatives submitted to the voters in 2004 were numbered 417, 419, and 420. Only Initiative 419 was approved by the voters.

Initiative 417 proposed to amend article III, § 24, of the Nebraska Constitution, which generally prohibits the Legislature from authorizing games of chance which are not specifically permitted in the constitution, by adding the following language:

> (5) This section shall not apply to laws enacted by the people by initiative measures by which the people may, contemporaneously with the adoption of this subsection or at any time thereafter, provide for the authorization, operation, regulation, and taxation of all forms of games of chance.

Initiative 419 dealt with taxation of games of chance conducted at casinos and other locations. Initiative 420 proposed a statute to (1) authorize all games of chance at casinos in metropolitan class cities within 2 miles of the Nebraska border; (2) authorize the use of electronic, mechanical, or other gaming devices at "strategic premises" where at least 250 such devices were

operated, as well as at racetracks; and (3) authorize the use of "[l]imited gaming devices" at casinos, "strategic premises," racetracks, and establishments selling alcoholic liquor for consumption on the premises. Initiative 420 also sought to establish the numbers of such casinos and gaming devices to be operated at various locations and to create a commission to regulate gaming. Initiatives 417 and 420 were defeated by the voters at the 2004 election, but Initiative 419 was approved. See Nebraska Blue Book 2004-05 at 1020-23. See, also, Neb. Rev. Stat. §§ 9-901 to 9-904 (Supp. 2005).

Lemon subsequently filed a petition for writ of mandamus in the district court for Lancaster County pursuant to § 32-1412. The operative petition sought a writ ordering Gale to verify the signatures on the 2006 initiative petitions, to obtain ballot language from the Attorney General, and to place the initiative measures on the November 7, 2006, ballot. On August 17, the district court entered an order granting in part and denying in part the relief sought by Lemon. The court concluded that Gale improperly interpreted the resubmission clause to require a comparison of the "fundamental essence" of the 2004 and 2006 initiative measures, reasoning that this interpretation of the clause failed to give effect to the plain and ordinary meaning of the constitutional language and ignored the "same measure" portion of the clause. The district court reasoned that the language of the resubmission clause instead required a consideration of whether the 2006 initiatives were "substantially the same" as the 2004 measures after examining the important and significant aspects of the measures, including their purposes, objects, and effect. Based on this rationale, the district court concluded that the 3 Casinos Initiative was not the same measure presented to the voters in 2004 and thus ordered Gale to proceed with signature verification and to obtain a ballot title from the Attorney General. The court concluded, however, that the K-12 Initiative was the same measure as Initiative 419 enacted by the electorate in 2004 and refused to order Gale to take any action on it. The court did not reach the First Amendment issues raised by Lemon. Gale perfected this appeal. We moved the appeal to our docket on our own motion and set an expedited briefing and oral argument schedule. See, Neb. Rev. Stat.

§ 24-1106(3) (Reissue 1995); § 32-1412. Lemon subsequently filed a cross-appeal.

## II. ASSIGNMENTS OF ERROR

Gale assigns, restated and consolidated, that the district court erred in failing to find that the 3 Casinos Initiative was legally insufficient and unconstitutional on its face because it violated the resubmission clause of article III, § 2, of the Nebraska Constitution.

On cross-appeal, Lemon assigns, restated and consolidated, that the district court erred in (1) finding that the K-12 Initiative violated the resubmission clause; (2) failing to find that the resubmission clause, as applied in this case to the K-12 Initiative, violated state and federal First Amendment free speech and free political association rights; and (3) denying costs and attorney fees.

## III. STANDARD OF REVIEW

A jurisdictional question which does not involve a factual dispute is a matter of law. *Loontjer v. Robinson*, 266 Neb. 902, 670 N.W.2d 301 (2003). Constitutional interpretation is a question of law. *Keef v. State*, 271 Neb. 738, 716 N.W.2d 58 (2006); *Pony Lake Sch. Dist. v. State Committee for Reorg.*, 271 Neb. 173, 710 N.W.2d 609 (2006). On questions of law, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision by the trial court. See *id.*

## IV. ANALYSIS

### 1. JUSTICIABILITY

In our order setting an expedited briefing schedule, we directed the parties to brief the issue of whether this appeal presents a justiciable controversy that is ripe for determination. In the absence of an actual case or controversy requiring judicial resolution, it is not the function of the courts to render a judgment that is merely advisory. *Wilcox v. City of McCook*, 262 Neb. 696, 634 N.W.2d 486 (2001); *Keller v. Tavarone*, 262 Neb. 2, 628 N.W.2d 222 (2001). We must initially decide whether we can reach the constitutional challenge to the proposed ballot measures prior to the election at which voters will be asked to approve or reject them.

Two prior decisions of this court bear on this question. *Duggan v. Beermann*, 249 Neb. 411, 544 N.W.2d 68 (1996), involved a challenge to an initiative measure which would have amended the Nebraska Constitution to limit the number of terms in office which could be served by specific state and federal officeholders in Nebraska. One day prior to the election at which the measure was to be submitted to the voters, the district court dismissed the action, in part based on its conclusion that the constitutionality of the proposed amendments was not justiciable unless and until the initiative measure was adopted. The measure remained on the ballot and was adopted by a majority of the electorate. The plaintiffs then filed a motion for new trial, asserting that the results of the election established justiciability, but the motion was denied. On appeal, this court held that the district court was correct in declining to rule on the constitutionality of the measure prior to the election, noting that "[t]o the degree that appellants sought a declaration that [the measure], if adopted, would enact amendments which violated the U.S. or the Nebraska Constitution, appellants were seeking an advisory opinion." *Duggan*, 249 Neb. at 424, 544 N.W.2d at 77. However, we held that the question became justiciable when the measure was adopted by the voters and the challengers filed a motion for new trial seeking declaratory relief.

*Loontjer v. Robinson*, 266 Neb. 902, 670 N.W.2d 301 (2003), was an appeal from an order enjoining the placement of an initiative measure on the ballot, based upon the determination of the district court that it violated the single subject rule of Neb. Const. art. III, § 2. The district court had rejected a contention that the initiative petition was defective because it failed to include a sworn statement listing the names and addresses of its sponsors in violation of Neb. Rev. Stat. § 32-1405(1) (Reissue 1998), finding that there had been substantial compliance with the statutory requirement. This determination was assigned as error on cross-appeal. *Loontjer* held that the sworn statement issue was justiciable because § 32-1412(2) (Reissue 1998) permitted a court to hear and decide a challenge to the legal sufficiency of an initiative petition prior to an election and that "[q]uestions dealing with statutory provisions concerning the form of a petition and the technical requirements of the sponsors affect the

legal sufficiency of an initiative." *Loontjer*, 266 Neb. at 908-09, 670 N.W.2d at 307. Based upon a determination that the failure to comply with the sworn statement requirement rendered the initiative legally insufficient, we, in *Loontjer*, affirmed the district court's award of injunctive relief without reaching the constitutional issue of whether the measure complied with the single subject rule.

Chief Justice Hendry concurred in the *Loontjer* result, reasoning that the single subject issue was justiciable and that the district court was correct in its conclusion that the initiative violated the single subject requirement. In a separate concurrence, two justices similarly reasoned that the "determination of whether the measure contains more than one subject is a justiciable issue." *Id.* at 925, 670 N.W.2d at 317 (Wright, J., concurring; Gerrard, J., joins). This concurrence distinguished the holding with respect to preelection justiciability in *Duggan v. Beermann*, 249 Neb. 411, 544 N.W.2d 68 (1996), noting that *Duggan* involved an attempt "to litigate the substantive constitutionality of the measure before it was adopted," whereas the single subject rule contained in Neb. Const. art. III, § 2, was a "procedural requirement" affecting the legal sufficiency of the measure. *Loontjer*, 266 Neb. at 920, 925, 670 N.W.2d at 314, 317 (Wright, J., concurring; Gerrard, J., joins).

The parties agree and we conclude that the constitutional issue presented in this case is justiciable. We are not asked to decide whether the measures, if adopted, would violate one or more substantive provisions of the state or federal Constitution. Rather, the issue is whether each measure complies with the requirement of our state Constitution that it not be the same, "either in form or in essential substance," as another measure submitted to the voters within a preceding 3-year period. Neb. Const. art. III, § 2. The question is whether the measure is legally sufficient to be submitted to the voters. See *Loontjer, supra.* In addition to determining the validity and sufficiency of signatures on a filed initiative petition, the Secretary of State is required in the first instance to "determine if constitutional and statutory requirements have been met" before placing the measure on the ballot. Neb. Rev. Stat. § 32-1409(3) (Reissue 2004). This determination is subject to judicial review, by which

a court may order the Secretary of State to place a measure on the ballot if it finds the measure to be legally sufficient, or enjoin the placement of the measure on the ballot if it is found to be legally insufficient. § 32-1412(2). This is the process by which the constitutional issue has reached us, and we now decide it.

## 2. RESUBMISSION CLAUSE

A constitution represents the supreme written will of the people regarding the framework for their government. *Duggan, supra.* The people have the power to amend the Nebraska Constitution by the initiative process pursuant to article III, § 2, which provides in part: "The first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature."

In adopting the Nebraska Constitution, however, the people have imposed upon themselves limitations on their ability to amend this fundamental law. *Duggan v. Beermann,* 245 Neb. 907, 515 N.W.2d 788 (1994). The dispositive issue in this action is the application of the limitation on the initiative power found in article III, § 2, which provides that "[t]he same measure, either in form or in essential substance, shall not be submitted to the people by initiative petition, either affirmatively or negatively, more often than once in three years." By its terms, the resubmission clause does not prevent resubmission or reconsideration by the voters, but merely postpones for 3 years reconsideration of the "same measure." Although this provision has been a part of our state Constitution since 1912, this court has not previously construed or applied it to a specific initiative measure. In construing the provision, we are guided by familiar general principles.

In ascertaining the intent of a constitutional provision from its language, the court may not supply any supposed omission, or add words to or take words from the provision as framed. *Pony Lake Sch. Dist. v. State Committee for Reorg.,* 271 Neb. 173, 710 N.W.2d 609 (2006); *DeCamp v. State,* 256 Neb. 892, 594 N.W.2d 571 (1999). The words in a constitutional provision must be interpreted and understood in their most natural and obvious meaning unless the subject indicates or the text

suggests that they are used in a technical·sense. See *Hall v. Progress Pig, Inc.*, 259 Neb. 407, 610 N.W.2d 420 (2000). It is permissible to consider the historical facts in determining the meaning of the language of the Nebraska Constitution. *Pig Pro Nonstock Co-op v. Moore*, 253 Neb. 72, 568 N.W.2d 217 (1997). It is also appropriate and helpful to consider, with the historical background, the evil and mischief attempted to be remedied, the objects sought to be accomplished, and the scope of the remedy its terms imply. *Id.* It is a fundamental principle of constitutional interpretation that each and every clause within a constitution has been inserted for a useful purpose. *Day v. Nelson*, 240 Neb. 997, 485 N.W.2d 583 (1992).

▮▮▮ The Legislature and the electorate are concurrently equal in rank as sources of legislation, and provisions authorizing the initiative should be construed in such a manner that the legislative power reserved in the people is effectual. *Loontjer v. Robinson*, 266 Neb. 902, 670 N.W.2d 301 (2003). The power of initiative must be liberally construed to promote the democratic process. *Id.* The right of initiative is precious to the people and is one which the courts are zealous to preserve to the fullest tenable measure of spirit as well as letter. *State ex rel. Stenberg v. Moore*, 258 Neb. 199, 602 N.W.2d 465 (1999); *State ex rel. Brant v. Beermann*, 217 Neb. 632, 350 N.W.2d 18 (1984).

▮▮▮ The resubmission clause is found in the same section of the state Constitution in which the people reserved to themselves the power· of the initiative. Neb. Const. art. III, § 2. It serves to define the. scope of the initiative power. We ascertain the purpose of the resubmission clause from its language. The people in their constitution reserved the power to reconsider a previously submitted initiative measure, but not more frequently than once in 3 years. The people's reserved power of the initiative and their self-imposed limitation on the power through the resubmission clause are of equal constitutional significance. Just as we must "respect and . . . give effect to the power the people have reserved to themselves" to amend the constitution or enact legislation through initiative measures, we are obliged to give meaningful effect to their "self-imposed limitations" on that power, such as that represented by the resubmission clause. See *Duggan v. Beermann*, 249 Neb. 411, 421-22, 544 N.W.2d

68, 75 (1996). Accord *Duggan v. Beermann,* 245 Neb. 907, 515 N.W.2d 788 (1994).

The parties agree and we conclude that the 2006 initiative measures are not the same in form as the 2004 measures. This case thus requires us to determine whether the two initiative measures submitted for inclusion on the 2006 general election ballot are the "same . . . in essential substance" as initiative measures which appeared on the ballot in 2004. All of the measures in question pertain to gaming. However, the parties have differing views on the appropriate test to determine whether a proposed 2006 measure is the same "in essential substance" as a measure submitted in 2004. Lemon takes a narrow view, arguing that the language of the resubmission clause "is designed to prevent the same initiative measure from being resubmitted using synonyms or mere rewording of language." Brief for appellee at 11. Gale has employed a broader comparison, arguing that the resubmission clause "precludes the submission of measures which share the same fundamental nature or essence more than once every three years." Brief for appellant at 24. The district court concluded that "the resubmission clause prevents the submission of a measure that is substantially the same as a measure submitted in the previous three years. This requires one to consider the important and significant aspects of the measure, including its purpose, object and effect."

If we were to apply the "substantially the same" standard utilized by the district court, Nebraska's resubmission clause would become similar to that of the New Jersey Constitution, which provides that if a proposed constitutional amendment is not approved by voters, "neither such proposed amendment nor one to effect the same or substantially the same change in the Constitution shall be submitted to the people before the third general election." N.J. Const., art. IX, ¶ 7. Applying New Jersey's constitutional language, a New Jersey court held that a proposed constitutional amendment pertaining to casino gambling was not "substantially the same" as a proposed amendment which had been defeated by voters 2 years earlier. *Young v. Byrne,* 144 N.J. Super. 10, 364 A.2d 47 (1976). The court noted that the first proposed amendment provided for state ownership and operation of casinos, while the second permitted private ownership; the first

amendment would have permitted casinos throughout the state, while the second limited casino locations to Atlantic City, New Jersey; and the two measures differed with respect to the treatment of gambling revenues. *Id.*

Applying the principle that each and every clause within a constitution has been inserted for a useful purpose, we do not interpret the phrase "same . . . in essential substance" in the Nebraska Constitution to mean "substantially the same." The latter phrase invites the type of discrete comparison employed by both the New Jersey court in *Young* and the district court in this case to determine if specific provisions in one measure differ from those of the other. Instead, we interpret the phrase "essential substance" in the Nebraska Constitution to require a broader, conceptual analysis and comparison of the fundamental theme and purpose of each initiative measure to determine if they are the "same" for purposes of the resubmission clause.

(a) 3 Casinos Initiative

Both the 3 Casinos Initiative and Initiative 417, rejected by the voters in 2004, propose an amendment to article III, § 24, of the Nebraska Constitution, which concerns gaming and begins with a general prohibition:

> (1) Except as provided in this section, the Legislature shall not authorize any game of chance or any lottery or gift enterprise when the consideration for a chance to participate involves the payment of money for the purchase of property, services, or a chance or admission ticket or requires an expenditure of substantial effort or time.

Paragraphs (2) and (3) of article III, § 24, provide that the Legislature may authorize a state lottery and certain other lotteries. Paragraph (4) of article III, § 24, permits the Legislature to authorize wagering on the results of parimutuel horseracing and certain bingo games conducted by nonprofit associations. There is no exception for other games of chance, including those conducted at a casino, and such gaming is therefore prohibited under article III, § 24(1).

If it had been approved by the voters in 2004, Initiative 417 would have added a provision to article III, § 24, consisting of the following language:

(5) This section shall not apply to laws enacted by the people by initiative measures by which the people may, contemporaneously with the adoption of this subsection or at any time thereafter, provide for the authorization, operation, regulation, and taxation of all forms of games of chance.

As was the case with Initiative 417, the 3 Casinos Initiative would also add a provision to article III, § 24, consisting of the following language:

(5) Nothing in this section shall be construed to prohibit state-authorized, state-regulated and state-licensed casino gambling. The casino gambling that is authorized is as follows:

(a) To the extent not prohibited by the laws of the United States, any traditional form of casino gambling and any additional form permitted by laws, rules and regulations established by the State of Nebraska;

(b) There shall be no more than one casino gambling establishment in each congressional district that existed on January 1, 2006, for a maximum of three casino gambling establishments; and

(c) This subsection shall not be construed to extend to political subdivisions the power to authorize, regulate, or license casino gambling or be construed as a prohibition of any form of any game of chance, lottery, or gift enterprise authorized under or pursuant to this Constitution.

The 3 Casinos Initiative would explicitly remove the present constitutional prohibition of casino gambling by authorizing three casinos in the state. Although it does not specifically mention casinos, Initiative 417 would also have removed the constitutional barrier to their operation by providing that article III, § 24, would not apply to laws enacted by initiative which authorized the "operation, regulation, and taxation of all forms of games of chance." The consequence of this proposed amendment is apparent from Initiative 420, also rejected by voters in 2004, which would have enacted a statute providing for the operation of games of chance at various locations, including casinos located in a city of the metropolitan class. We conclude that the essential substance of the 3 Casinos Initiative submitted for 2006 and Initiative 417 submitted to the electorate in 2004

is the same: amending the constitution to authorize enactments permitting the operation of games of chance. We therefore determine that the district court erred in ruling that inclusion of the 3 Casinos Initiative on the 2006 general election ballot would not violate the resubmission clause and in ordering Gale to proceed with signature verification and to submit the measure to the Attorney General for ballot title preparation. We find merit in Gale's appeal from this ruling.

#### (b) K-12 Initiative

Neither party questions the conclusion of the district court that the K-12 Initiative must be compared to Initiative 419, now enacted into law, because "[t]he resubmission clause does not distinguish between measures rejected and those that are approved." We agree with this reasoning.

The K-12 Initiative proposed for the 2006 general election ballot would enact a statute which directs or "earmarks" the use of tax proceeds derived from constitutionally permitted, state-authorized casino gambling. After providing funds to a state agency to control and regulate gaming; contributions to the Compulsive Gamblers Assistance Fund, see Neb. Rev. Stat. § 71-817 (Supp. 2005); and funds for live horserace purse offerings, the K-12 Initiative requires a minimum of 95 percent of all remaining tax receipts to be used to provide financial assistance in the manner determined by the Legislature for elementary and secondary education.

Initiative 419 was a statutory initiative measure approved by a majority of the electorate in the 2004 general election. See Nebraska Blue Book 2004-05 at 1022. Its provisions are codified at §§ 9-901 to 9-904. Section 9-902 provides:

> There shall be an annual gaming tax imposed by the State of Nebraska on gross gaming revenue generated at permitted locations by authorized operators from the operation of all games of chance, except for games of chance authorized under Chapter 2 or Chapter 9, as follows:
> 
> (1) With respect to the operation of all games of chance operated by an authorized operator at a permitted location, a gaming tax equal to thirty-six percent of the first fifteen million dollars of the gross gaming revenue thereof and

twenty percent of the gross gaming revenue thereof in excess of fifteen million dollars;

(2) Of the gaming tax so imposed on gaming revenue at a casino, seventy-five percent thereof shall be payable to the General Fund and twenty-five percent thereof shall be payable to the community which authorized such games of chance at such casino; and

(3) Of the gaming tax so imposed on gaming revenue at any other permitted location, twenty-five percent thereof shall be payable to the General Fund and seventy-five percent thereof shall be payable to the community, or the communities, pro rata, which authorized such games of chance at such permitted location.

Section 9-903 provides for an annual gaming license fee to be paid by authorized operators of games of chance, and § 9-904 provides that gaming taxes and fees "shall be in lieu of all other taxes, fees, franchise payments, occupation taxes or excise taxes levied or imposed by the State of Nebraska, but shall not be in lieu of such other fees, income taxes, sales taxes, or property taxes levied or imposed against the public generally."

The statutes which resulted from the voters' approval of Initiative 419 in 2004 deal with the collection and distribution of revenue which would have been derived from the "community authorized" gaming contemplated by failed Initiatives 417 and 420. We recognize that the K-12 Initiative differs from the 2004 initiatives in that it would create a method of distributing revenue from the "state authorized" gaming operations which would result from approval of the 3 Casinos Initiative, as distinguished from "community authorized" operations. Initiative 419 and the K-12 Initiative also differ with respect to the specific manner in which gaming revenue would be distributed. While we acknowledge these differences, we conclude that they do not go to the essential substance of the measures under comparison. The fundamental theme and purpose of each measure is the distribution of new gaming revenues which would result if the current constitutional prohibition of games of chance were amended to permit casinos to operate in this state. We therefore conclude that Initiative 419 and the K-12 Initiative are the same in essential substance, and we agree with the district court that

the resubmission clause bars submission of the K-12 Initiative at the 2006 general election.

### 3. Free Speech and Political Association Claims

 Lemon contends on cross-appeal that in interpreting the resubmission clause, this court must consider the First Amendment concepts of "overbroad administrative discretion" and "balancing the actual burdens on speech and association against proven interests of government." Brief for appellee on cross-appeal at 47-48. He contends that "[o]nly a narrowly tailored and necessary remedy is available to the government under this test." Brief for appellee on cross-appeal at 48. Although the district court did not reach this issue, we do so here because of Lemon's claim that any interpretation of the resubmission clause which would prevent the two initiative measures from being placed on the ballot in 2006 would violate his rights of free speech and political association guaranteed by the First Amendment to the U.S. Constitution and article I, § 5, of the Nebraska Constitution. The parameters of the constitutional right to freedom of speech are the same under both the federal and the state Constitutions. *Pony Lake Sch. Dist. v. State Committee for Reorg.*, 271 Neb. 173, 710 N.W.2d 609 (2006); *State v. Rabourn*, 269 Neb. 499, 693 N.W.2d 291 (2005).

 "[T]he right to a state initiative process is not a right guaranteed by the United States Constitution, but is a right created by state law." *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997). See, also, *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291 (6th Cir. 1993). " 'States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process.' " *Pony Lake Sch. Dist.*, 271 Neb. at 190, 710 N.W.2d at 624, quoting *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 119 S. Ct. 636, 142 L. Ed. 2d 599 (1999). "But if a state has conferred the right of initiative and referendum, it is 'obligated to do so in a manner consistent with the Constitution.' " *Pony Lake Sch. Dist.*, 271 Neb. at 190, 710 N.W.2d at 624, citing and quoting *Meyer v. Grant*, 486 U.S. 414, 108 S. Ct. 1886, 100 L. Ed. 2d 425 (1988).

*Buckley* held that Colorado's requirements that circulators be registered voters and wear identification badges violated free

speech principles. *Meyer* held that a prohibition against paid circulators violated First Amendment protections of free speech. Unlike *Buckley* and *Meyer*, this case does not involve statutes or procedures affecting the exercise of the initiative power conferred by a state constitution. As we have noted, the resubmission clause is a self-imposed limitation on the constitutionally reserved power of initiative which defines its scope. In that sense, it is analogous to constitutional requirements regarding the number of signatures required to place an initiative measure on the ballot.

In holding that our resolution of that issue in *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994), did not violate the free speech rights of petition organizers, the Court of Appeals for the Eighth Circuit noted that the organizers "can claim no constitutionally-protected right to place issues before the Nebraska electorate; any opportunity to do so must be subject to compliance with state constitutional requirements." *Dobrovolny*, 126 F.3d at 1113. See, also, *Biddulph v. Mortham*, 89 F.3d 1491 (11th Cir. 1996). In a memorandum and order affirmed by the court of appeals in *Dobrovolny*, the U.S. District Court for the District of Nebraska noted "an important categorical difference between granting and defining the right to an initiative process in the state constitution and statutory procedures enacted to implement the right so defined by the state constitution." *Dobrovolny v. Moore*, 936 F. Supp. 1536, 1541 (D. Neb. 1996), *affirmed* 126 F.3d 1111 (8th Cir. 1997). The federal district court concluded that our opinion in *Duggan* did not "interpret a regulation or statute that would limit the right to the initiative procedure," but, rather, "ascertained what the right itself meant and what the will of the people was" in enacting the constitutional amendment interpreted. *Id.* at 1542.

The resubmission clause as interpreted herein is a limitation on the initiative process itself, but does not restrict speech or expression because it does not regulate the process of advocacy itself by dictating who can speak or how they must go about speaking. See *Initiative and Referendum Institute v. Walker*, 450 F.3d 1082 (10th Cir. 2006). We conclude that its application does not impair any rights to free speech under the federal or state Constitution. Nor are we persuaded that the application of

the resubmission clause presents a ballot access issue implicating a First Amendment right to political association.

In this regard, Lemon relies on *Anderson v. Celebrezze*, 460 U.S. 780, 103 S. Ct. 1564, 75 L. Ed. 2d 547 (1983), in which the U.S. Supreme Court applied a flexible balancing test in determining that a state statute which required an independent candidate for the office of President of the United States to make certain filings in March in order to appear on the November 1980 ballot placed an unconstitutional burden on voting and associational rights of his supporters. Lemon argues that the same test should be applied here. However, because the question whether an initiative measure should appear on the ballot is determined solely by a state's constitution, we conclude that *Anderson* is inapplicable. See, *Initiative and Referendum Institute, supra*; *Dobrovolny v. Moore*, 126 F.3d 1111 (8th Cir. 1997); *Biddulph, supra*; *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291 (6th Cir. 1993). Accordingly, we reject Lemon's assignments of error on cross-appeal relating to First Amendment issues.

### 4. COSTS AND ATTORNEY FEES

 Lemon assigns in his cross-appeal that the district court erred in denying him costs and attorney fees. This assignment of error is not argued in his brief. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Cole v. Isherwood*, 271 Neb. 684, 716 N.W.2d 36 (2006); *White v. White*, 271 Neb. 43, 709 N.W.2d 325 (2006). We do not reach the issue in this appeal.

### V. CONCLUSION

We affirm that portion of the judgment of the district court concluding that the resubmission clause contained in article III, § 2, precludes placement of the K-12 Initiative on the ballot for the 2006 general election because it is the same in essential substance as Initiative 419 submitted in 2004. However, based on our determination that the 3 Casinos Initiative is the same in essential substance as Initiative 417 submitted in 2004, we reverse the determination made by the district court that the 3 Casino Initiative did not violate the resubmission clause and vacate that portion of its order requiring Gale to proceed with

signature verification on the 3 Casinos Initiative and further directing him to forward that initiative measure to the Attorney General for ballot title preparation. We find merit in Gale's appeal and no merit in Lemon's cross-appeal. We remand the cause to the district court with directions to dismiss Lemon's verified complaint for writ of mandamus.

> AFFIRMED IN PART, AND IN PART REVERSED
> AND VACATED, AND CAUSE REMANDED
> WITH DIRECTIONS.

HENDRY, C.J., and WRIGHT, J., not participating.